INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 180, C. I: O., and another, Respondents, vs. GOODING and others (WISCONSIN EMPLOYMENT RELATIONS BOARD), Appellants.

*September 9—November 18, 1947.*

364

For the appellants there was a brief by the *Attorney General,* *Warren H. Resh,* assistant attorney general, and *Elwyn B. Bensene in pro. per.,* and oral argument by *Mr. Resh* and *Mr. Bensene.*

For the respondents there was a brief by *Max Raskin,* attorney, and *William F. Quick* of counsel, both of Milwaukee, and oral argument by *Mr. Quick.*

WICKHEM, J.   Plaintiff alleges that it is the duly recognized collective-bargaining agent for the employees of the J. I. Case Company of Racine, and that on January 10, 1947, a number of residents of Racine county filed with defendant board a petition requesting that the board conduct a vote on the question whether a certain offer by the company should

be accepted by its employees. It is further alleged that plaintiff demanded of the board permission to examine the petition and its signatures and that this permission was denied without the assignment of any reason. It appears without dispute that defendant board gave the petition an official file number and placed it in its official file. It later considered the petition, determined that it was without jurisdiction to grant it, filed a written decision to that effect under its official seal, and gave this decision an official file number.

It is asserted by plaintiff that it is entitled to inspect the citizens' petition under the terms of sec. 18.01, Stats. This section reads as follows:

"18.01 (1) *Custody and delivery of official property and records.* (1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.

"(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof may prescribe, examine or copy any of the property or things mentioned in subsection (1). . . ."

There are many questions as to the construction of sec. 18.01, Stats., which bear importantly upon the duties of public officers, but they involve so many factual complexities that we deem it unwise to go any further in this decision than is necessary to settle this particular controversy.

Sec. 18.01, Stats., was enacted by the adoption of a revisor's bill in 1917. Ch. 178, Laws of 1917, Bill No. 133, S. The revisor's notes state that the purpose of the section was to "condense, make uniform, and generalize a number of specific

provisions relating to particular officers" enacted at various times. Prior to 1917 sec. 977 was in force and provided:

"Whenever any person shall be removed from office or the term for which he shall have been elected or appointed shall expire he shall, on demand, deliver to his successor all the books and papers in his custody as such officer or in any way appertaining to his office; and every person violating this provision shall forfeit not less than twenty-five dollars nor more than two thousand dollars."

It will be noted that sec. 977, Stats., relates only to books and papers. There were in force at the time, however, numerous sections having to do with the duty of certain officers to keep and turn over to their successors papers, records, and other property in their hands as such officers. Sec. 138 was applicable to the secretary of state; secs. 153 to 157 to the state treasurer; sec. 163 to the attorney general; sec. 709 to the county clerk; secs. 715 and 716 to the county treasurer; sec. 758 to the register of deeds; sec. 768 to the county surveyor; sec. 836 to the town treasurer; sec. 889 to village officers; sec. 486m, 1, to county and district superintendents and city superintendents of cities of the fourth class; sec. 725 to sheriffs; sec. 832 to town clerks; sec. 849 to town librarians. There were also statutes describing the conditions of bonds to be required of various officers: Sec. 705, that of the county clerk; sec. 720, that of the sheriff; sec. 740, that of the clerk of the circuit court; sec. 749, that of the district attorney; sec. 755, that of the register of deeds; sec. 762m, 1, that of the county abstractor (together with a description of his duties); sec. 880, that of the village clerk; and sec. 881, that of the village treasurer. These statutes are not identical in form but they were applicable to money, documents, books, records, papers, and property and, in general, these items were specifically named and required to be delivered to the successors in office. In all of these statutes, as well as in sec. 977, there were qualifying or limiting words that are of importance. They vary

slightly but all were intended to mean the same thing: "Belonging or appertaining to his said office;" "belonging to his said office;" "belonging to or preserved in his office;" "books, records, papers, furniture and other effects belonging to or preserved in his office;" "books, records, papers and property in his office;" "belonging to or deposited in his office;" "appertaining or belonging to said office;" "belonging to his office and in his possession;" "in his hands as such librarian;" "belonging to, filed or deposited in his office;" "papers and property of his office." None of these statutes define the foregoing phrases but leave to the proper construction of them the scope of an officer's duty. None of these statutes has a provision similar to that in sec. 18.01 (1) relating to property required by law to be kept, filed, or deposited. The statutes in force at the time the revisor's bill was drafted belonged in two groups: One relating to all officers but having no reference to property other than papers, records, etc. The other relating to particular officers but including all possible kinds of property in the hands of the officer as such officer. There were also in force at the time of the enactment of sec. 18.01 three statutes providing specifically for rights of inspection. Sec. 768 after specifically providing for the keeping of books, records, plats, files, papers, and property belonging to his office, required the county surveyor to "afford opportunity to examine the same to any person desiring," and in addition to requiring him as heretofore noted to turn the records over to his successor. Sec. 880, sub. (5), required the village clerk "to permit any person with proper care to examine and copy" any of the records, books, papers, or property belonging to, filed, or deposited in his office. Sec. 186, which was a part of ch. 15, Stats., dealing with the pre-emption and sale of public lands, required the land commissioner to preserve records, books, reports, surveys, maps, field notes, plats, and other papers, and adds the provision: "All records, books, and files kept by the commissioners shall at all business hours be open, under proper regulations made by them, to the inspection of any person, free of charge."

Sec. 18.01 (1), Stats., in supplanting all the existing legislation heretofore mentioned, deals with three specific types of papers that must be kept by an officer and delivered to a successor in office: (1) Such books, papers, records, etc., as are *required by law* to be filed, deposited, or kept in his office; (2) books, papers, etc., *in his possession as such officer;* (3) books, papers, etc., to *the possession of which he is entitled as such officer.* At the outset it is clear that (3) just above has no materiality in this case. It was added to sec. 18.01 (1) according to the revisor's note and also in accordance with its literal meaning to give officers the power and to impose upon them the duty to "bring all such property within their control." Sec. 18.01 (2) supplanted and made general the public-inspection privileges theretofore granted in specific situations by secs. 186, 768, and 880 (5). Comment upon this section will be made in the appropriate place in the opinion.

The first general inquiry is as to the purpose of the legislature in including parts (1) and (2) in sec. 18.01, Stats., and the proper construction to be put upon these portions of the section. Part (1), which requires the officer to deliver to his successor, papers, etc., required by law to be filed, deposited, or kept, was plainly intended to cover all property, papers, records, etc., specifically required by statute to be filed, deposited, or kept, or so required by some rule enacted under a valid rule-making power. We discover no specific requirement that papers such as the petition here involved be filed or kept. It is true that sec. 111.07 (3) requires that "a full and complete record shall be kept of all proceedings had before the board," but an examination of sec. 111.07 (2) (a) indicates that the petition could not by any possibility have initiated a proceeding before the board because it was not filed by a party in interest and did not relate to a specific unfair labor practice. There are various other filing requirements in ch. 111, Stats., but none of them would be applicable to this petition.

We now come to the portion of the statute which requires an officer to keep and to deliver to his successor all papers, records,

etc., that are in his lawful possession as such officer. This phrase was inserted because it was recognized that the portion of the section dealing with papers specifically required to be kept, deposited, or filed would not cover all of the situations in which it was desirable that papers should be kept and delivered to a successor and the more ambiguous phrase "in the lawful possession or control of himself or his deputies, . . . as such officers" was added. It is suggested in plaintiff's brief that the term "as such officers" applies only to the third situation covered by sec. 18.01 (1), Stats., namely, that in which the property, papers, etc., to which he is entitled are out of the possession of the officer. We think this is not true by ordinary rules of grammatical construction, and when the precedent legislation is considered it is evident that it was intended to adopt the policy and use substantially the phrases of the numerous statutes which refer to the duty of holding and delivering property in his possession "as such officer" or "appertaining to his office" or "belonging to his office."

Just what is the precise scope and meaning of the phrase "as such officer" in its application to the thousands of situations to which it can apply presents a difficult question. The contention is here made that sec. 18.01 (1), Stats., requires every letter, paper, and communication, varying from the immaterial and irrelevant to the scurrilous and libelous, to be kept, filed, and ultimately delivered to a successor in office without respect to the relation of such papers to the functions of the office. We think, however, that it was intended as a limitation. We recognize the difficulty of so stating its limitation as to give a rule of thumb that will enable public officers easily to decide when a paper must be kept. It is clear enough that it was supposed by the legislature that numerous papers other than those required by specific statute or rule to be kept should remain in the files as a part of the records of an office. It is also clear that the words of limitation give some power to officers to dispose of what this court has called purely fugitive papers having no rela-

tion to the function of the office.   Beyond that, it is not necessary to go because we think that enough of the statutory purpose in inserting this limitation can be isolated and stated to dispose of this case.   It is the rule independently of statute that public records include not only papers specifically required to be kept by a public officer but all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate, or customary method of discharging the duties of the office.   This was recognized in *State ex rel. Dinneen v. Larson,* 231 Wis. 207, 214, 284 N. W. 21, 286 N. W. 41, in which this court said:

"While it is of course open to the defendant upon a trial to show,—if such should be the fact,—that by the custom and practice of the commission those letters were mere fugitive papers, which were not required to be filed or kept, but were subject to disposition at the pleasure of the secretary, the relevancy of the letters to matters which may legitimately concern the commission in its official activities is evidence of sufficient substance upon a preliminary examination to warrant a magistrate in concluding that they constituted property and things required by law to be kept by defendant.   Consequently, in so far as the circumstances stated above admitted of findings by the examining magistrate that Dinneen wilfully caused those original letters to be withdrawn from the commission's office and delivered to B. E. Buckman & Company, or that he wilfully neglected to perform his duty to keep them in that office, the magistrate can be deemed to have had probable cause to believe that sec. 18.01 (1), Stats., had been violated by Dinneen."

In the case at bar the petition was received and given a file number.   It aroused official action of the board resulting in a formal written opinion which was also filed.   This appears to us to indicate that it is a public record or at least that it is a paper in the hands of a public official as such officer.   While the petition itself is not a memorial by the officer, it is in a sense a part of a docket which includes the memorial of an officer and for the foregoing reasons must be considered to be included

in the description of papers affected by sec. 18.01 (1), Stats. We think this might be true even if the commission could originally have consigned the paper to the wastebasket or have returned it to its sender, without taking formal action, although we shall make no hypothetical determination upon this point. The fact that the commission considered itself without jurisdiction appears to us to be immaterial since it discharged a public function in determining the jurisdictional question. We limit our determination in this case to the conclusion that the petition is within the provisions of sec. 18.01 (1).

We now come to a consideration of the effect of sec. 18.01 (2), Stats., which provides:

"Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof may prescribe, examine or copy any of the property or things mentioned in subsection (1)."

It is stated in the revisor's notes that this subsection "is believed to give expression to the general implied right of the public to consult public records." In view of the presumption that a revisor's bill is not intended to change the law we conclude that this is the scope of the section. While it is possible to contend that the words are so clear as not to be subject to construction we are of the view that the common-law right of the public to examine records and papers in the hands of an officer has not been extended.

We shall not go into the scope of the common-law right exhaustively or attempt to document our observations upon it. It is enough to say that there are numerous limitations under the common law upon the right of the public to examine papers that are in the hands of an officer as such officer. Documentary evidence in the hands of a district attorney, minutes of a grand jury, evidence in a divorce action ordered sealed by the court are typical. The list could be expanded but the foregoing is enough to illustrate that in certain situations a paper

may in the public interest be withheld from public inspection. Whatever limitations existed at common law still exist under sec. 18.01 (2), Stats. We go no further because defendants have not pointed out any common-law limitation that is pertinent here and we have been unable to discover any. The petitioners sought to induce action by defendants as public officers and must be deemed to have contemplated a public proceeding before the commission. They are in no position to insist that any public interest will be served by keeping this document secret. The union was interested in the subject matter of the petition and we know of no common-law rule of policy that would preclude it from inspection of the petition. While there is some authority to the effect that a member of the public is required to have some interest other than curiosity in order to investigate public records, we think this has no application here because the interest of the union goes beyond mere curiosity. There is also some question whether if this rule ever obtained in this state it was not changed by the type of statutes which were supplanted by sub. (2). In this connection see *Hanson v. Eichstaedt,* 69 Wis. 538, 35 N. W. 30.

One more observation upon this point would seem to be pertinent. This was determined by the trial court upon a motion to quash. There are naturally no allegations on the part of plaintiff that it had improper motives in examining the petition and there is no return to the writ. An affidavit attached to the motion papers of a person seeking to intervene can hardly be said to furnish any basis in the present state of the record for ascribing to plaintiff improper motives in seeking to examine the petition. This determines adversely to defendants a contention that a court may in its discretion deny a writ even where plaintiff has an absolute legal right. There is no evidence here of an abuse of discretion. We shall therefore pursue the matter no further.

*By the Court.*—Order affirmed.