Currie, C. J.
These three issues are raised by this appeal :
(1) Is petitioner the real party in interest ?
(2) Does sec. 18.01, Stats., apply to the report sought to be obtained by petitioner ?
(3) If sec. 18.01 does apply, is the right of inspection subject to any limitations ?

Real Party in Interest.

Sec. 260.13, Stats., provides, “Every action must be prosecuted in the name of the real party in interest except as otherwise provided in section 260.15.”
*681 Defendant asserts that the real party in interest in this case is the Waukesha Freeman and that the suit should not be allowed to proceed in the name of the petitioner. In this regard defendant relies heavily on a number of Freeman headlines and news stories which indicated that the newspaper was bringing the lawsuit. A newspaper headline is of no value in the legal determination of who is the real party in interest.
One of the leading cases which has established the guiding principles for determining whether a party is the real party in interest is Marshfield Clinic v. Doege.[1] The court therein quoted with approval from 15 Encyc. Pl. & Pr., p. 710, the following:
“ ‘The real party in interest, within the meaning of this provision of the code, is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject matter, as distinguished from one who has only a nominal, formal, or technical interest in or connection with it.’ ” [2]
Plaintiff surely fits within this definition because if successful he will be the one entitled to make the inspection. That his motivation in seeking inspection is to benefit his newspaper and permit it to publish the material gained therefrom is immaterial. The fact that he as a citizen deems it essential that the material contained in the report be made available to the public is sufficient to qualify him as the real party in interest.

Applicability of Sec. 18.01.

Subs. (1) and (2) of sec. 18.01, Stats., provide:
“ (1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or *682 district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.
“(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof may prescribe, examine or copy any of the property or things mentioned in subsection (1).”
While technically it may be inaccurate to refer to the papers filed by City Attorney Buckley with defendant mayor as a “report” we do so in the interest of brevity. Defendant contends that the afore-quoted statutory provisions do not extend to this report because it was not “required by law” to be filed with the mayor. However, the statutory words of sub. (1) “or which are in the lawful possession or control of himself” extend the applicability of the statute to some papers and documents not required by law to be filed, deposited, or kept in the mayor’s office.
The leading case dealing with inspection of public records and documents pursuant to sec. 18.01, Stats., is International Union v. Gooding.[3] In that case plaintiff union requested an alternative writ of mandamus to compel defendant and others, representing the Wisconsin employment relations board, to make available a petition on file with the board. There was no statutory provision authorizing the filing of this petition because it sought to invoke a jurisdiction which the board did not possess. Plaintiff asserted it was entitled to look at the petition under sec. 18.01 (1) and (2). In considering what papers and records the statute applied to, the court said:
*683 “Sec. 18.01 (1), Stats., in supplanting all the existing legislation heretofore mentioned, deals with three specific types of papers that must be kept by an officer and delivered to a successor in office: (1) Such books, papers, records, etc., as are required by law to be filed, deposited, or kept in his office; (2) books, papers, etc., in his possession as such officer; (3) books, papers, etc., to the possession of which he is entitled as such officer[4] (Emphasis supplied.)
In determining that the trial court had correctly denied the motion to quash the writ, the court emphasized its position by stating:
“It is clear enough that it was supposed by the legislature that numerous papers other than those required by specific statute or rule to be kept should remain in the files as a part of the records of an office. ... It is the rule independently of statute that public records include not only papers specifically required to be kept by a public officer but all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate, or customary method of discharging the duties of the office.” [5]
This overruled sub silento the dictum appearing in the final paragraph of the opinion in State ex rel. Spencer v. Freedy [6] in which the conclusion was expressed that sec. 18.01, Stats., only allowed inspection of “anything required by law to be filed, deposited, or kept in a public office.”
Defendant mayor as “head of the . . . police departments” [7] is entitled to a report of any investigation of the police department made by the city attorney. We deem it wholly immaterial, on the issue of whether defendant was in legal custody of the papers sought to be inspected, that here *684 the city attorney did not submit a formal report stating the conclusions he had reached as a result of his investigation, but instead merely filed with the mayor the statements of persons interviewed and interdepartmental memoranda. We conclude that sec. 18.01 (1) and (2), Stats., is applicable to the documents with respect to which petitioner seeks to compel inspection.

Limitations on Right to Inspect.

However, merely because the papers sought to be inspected, although not required by law to be filed or kept by defendant, were in his lawful possession, did not automatically entitle petitioner to inspect them. The inspection provisions of sec. 18.01 (1) and (2), Stats., were contained in a revisor’s bill[8] and prior to that enactment there existed no statute which attempted to spell out the rights of members of the public to inspect public records. The revisor’s notes to sub. (2) of sec. 18.01 stated that this subsection “is believed to give expression to the general implied right of the public to consult public records.” The court in the Gooding Case quoted this statement and then declared:
“In view of the presumption that a revisor’s bill is not intended to change the law we conclude that this is the scope of the section. While it is possible to contend that the words are so clear as not to be subject to construction we are of the view that the common-law right of the public to examine records and papers in the hands of an officer has not been extended.
“We shall not go into the scope of the common-law right exhaustively or attempt to document our observations upon it. It is enough to say that there are numerous limitations under the common law upon the right of the public to examine papers that are in the hands of an officer as such officer. Documentary evidence in the hands of a district attorney, *685 minutes of a grand jury, evidence in a divorce action ordered sealed by the court are typical. The list could be expanded but the foregoing is enough to illustrate that in certain situations a paper may in the public interest be withheld from public inspection. Whatever limitations existed at common law still exist under sec. 18.01 (2), Stats.” [9]
An authoritative statement of the common-law right of inspection of public documents is that made by the Vermont court in Clement v. Graham [10] as follows:
“We think it may be safely said that at common law, when not detrimental to the public interest, the right to inspect public records and public documents exists with all persons who have a sufficient interest in the subject-matter thereof to answer the requirements of the law governing that question.” [11]
Thus the right to inspect public documents and records at common law is not absolute. There may be situations where the harm done to the public interest may outweigh the right of a member of the public to have access to particular public records or documents. Thus, the one must be balanced against the other in determining whether to permit inspection. [12] An illustration of a type of situation in which the harm to the public interest, if inspection were permitted, was held to outweigh the individual’s right to inspect is provided by City & County of San Francisco v. Superior Court.[13] There the records sought to be inspected contained *686 information which had been gathered from employers under the pledge that it would be kept confidential. To have permitted inspection would not only have constituted a breach of this pledge, but would have seriously handicapped governmental agencies in gathering information in the future under a similar pledge because of distrust that the pledge would not be observed.
We deem it unwise to attempt to catalog the situations in which harm to the public interest would justify refusal to permit inspection. It is a subject which had best be left to case-by-case decision.
The duty of first determining that the harmful effect upon the public interest of permitting inspection outweighs the benefit to be gained by granting inspection rests upon the public officer having custody of the record or document sought to be inspected. If he determines that permitting inspection would result in harm to the public interest which outweighs any benefit that would result from granting inspection, it is incumbent upon him to refuse the demand for inspection and state specifically the reasons for this refusal. If the person seeking inspection thereafter institutes court action to compel inspection and the officer depends upon the grounds stated in his refusal, the proper procedure is for the trial judge to examine in camera the record or document sought to be inspected. Upon making such in camera examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection.[14]
*687 In reaching a determination so based upon a balancing of the interests involved, the trial judge must ever bear in mind that public policy favors the right of inspection of public records and documents, and, it is only in the exceptional case that inspection should be denied. In situations, such as in the instant case, where inspection is sought of a number of documents, the ultimate decision after conducting the balancing test might be to grant inspection as to certain of the documents and deny it as to others. If a single record or document is sought to be inspected, and disclosure of only a portion is found to be prejudicial to the public interest, the trial judge has the power to direct such portion to be taped over before granting inspection.
Here the testimony does not disclose that defendant stated any reason for refusing to permit inspection at the time inspection was requested of him. Paragraphs 5 and 6 of defendant’s return states these reasons for denying inspection:
“5. That, on information and belief, the said miscellaneous papers prepared by others than the said John P. Buckley and the statements given by various persons related, among other things, to pending and potential civil claims against the City of Waukesha and to possible ordinance violations and were documentary evidence under the control of the said John P. Buckley, City Attorney, and were part of and consisted of his ‘work product’ as attorney for said City of Waukesha.
“6. That, on information and belief, the examination of said miscellaneous papers and statements, and the probable publication of parts thereof by the petitioner would not be in the public interest at this time, but on the contrary would be harmful to the public interest.”
Defendant cites no case authority in which a report such as the instant one was held to be the “work product” of an attorney and free from investigation. This doctrine has evolved to protect the work product of an attorney in respect to a specific case from being subject to discovery by the *688 opposite party. Since the investigative report in the instant case was not gathered for any particular litigation, and obviously not for the instant litigation, it is clearly not protected by the “work product” theory. As the court said in Park & Tilford Distillers Corp. v. United States: [15]
“We then must assume defendant’s position to be that the papers here sought were trial preparation materials assembled by the OPA for use in any contest that might develop in litigation wherein the OPA might be a party. It cannot be said that these papers were gathered by the United States Attorney as part of his preparation for the instant case and therefore within the ‘work product privilege’ . ...” [16]
While the instant report does not qualify as an attorney’s work product so as to entitle it to be kept from compulsory disclosure, City Attorney Buckley gave testimony tending to establish the possibility that harm would occur to the city if this report were made public. He testified that one claim had already been filed in which damages were sought against the city by reason of acts by the police department, and that an attorney had been employed to prosecute the claim. He further stated that as a result of the documents constituting the report he had knowledge of other potential claims which might be made against the city.
In addition to the argument that the interest of the city might be harmed by disclosure because of pending and potential claims based on police conduct referred to in the report, defendant contends that the reputations of the policemen involved might be damaged by granting inspection contrary to the legislative policy embodied in sec. 14.90 (3) (e), Stats. Sec. 14.90 has been referred to as the “Public’s Right to Know” statute and requires open meetings *689 of state and local governing and administrative bodies, boards, commissions, committees, and agencies, except where executive or closed sessions are held for certain enumerated purposes. Sub. (3) (e) of this statute provides:
“(3) Nothing herein contained shall prevent executive or closed sessions for purposes of:
“(e) Financial, medical, social or personal histories and disciplinary data which may unduly damage reputations;”
We determine that this legislative policy of not disclosing data which may unduly damage reputations carries over to the field of inspection of public records and documents. The statutory word “unduly” is significant. As applied to inspection it does not bar all inspection of public records and documents that might damage reputations, but requires a balancing of the interest of the public to be informed on public matters against the harm to reputations which would likely result from permitting inspection.
In the instant situation the public interest to be served by permitting inspection is to inform the public whether defendant mayor has been derelict in his duty in not instigating disciplinary proceedings against policemen because of wrongful conduct disclosed in the report. If the report contains statements of persons having first-hand knowledge, which disclose police misconduct, the fact that reputations may be damaged would not outweigh the benefit to the public interest in obtaining inspection. On the other hand statements based upon hearsay or suspicion, or inconclusive in nature, would be of small public benefit if made public, and might do great harm to reputations.
No claim has been made that the investigation of the Waukesha police department is still continuing, or that inspection of the report would interfere with any contemplated disciplinary action.
*690 No prior Wisconsin case has laid down the requirement that the public officer who refuses a request to permit inspection of public records because he believes it to be harmful to the public interest, or because it would unduly damage reputations, must justify such refusal by specially stating his reasons therefor. Accordingly, although defendant failed to state a valid reason for his determination to refuse inspection to petitioner, we conclude that justice requires that the cause be remanded to the circuit court so that court can make a proper determination as to whether inspection should be granted under the guidelines herein laid down.
By the Court. — Judgment reversed, and cause remanded for further proceedings consistent with this opinion.
The following memorandum was filed January 19, 1966.

 (1955), 269 Wis. 519, 69 N. W. (2d) 558.

 Id. page 523.

 (1947), 251 Wis. 362, 29 N. W. (2d) 730.

 Id. page 369.

 Id. pages 370, 371.

 (1929), 198 Wis. 388, 233 N. W. 861.

 Sec. 62.09 (8) (d), Stats.

 Ch. 178, Laws of 1917.

 Supra, footnote 3, pages 372, 373.

 (1906), 78 Vt. 290, 63 Atl. 146.

 Id. pages 315, 316. Other authorities in accord are Fayette v. Martin (1939), 279 Ky. 387, 130 S. W. (2d) 838; Egan v. Board of Water Supply (1912), 205 N. Y. 147, 98 N. E. 467; Zuppa v. Maltbie (1947), 190 Misc. 778, 76 N. Y. Supp. (2d) 577; Chytracek v. United States (D. C. Minn. 1932), 60 Fed. (2d) 325; 76 C. J. S., Records, p. 133, sec. 35.

 MacEwan v. Holm (1961), 226 Or. 27, 359 Pac. (2d) 413, 85 A. L. R. (2d) 1086.

 (1951), 38 Cal. (2d) 156, 238 Pac. (2d) 581.

 This procedure is similar in nature to the procedure this court outlined in State v. Richards (1963), 21 Wis. (2d) 622, 633, 124 N. W. (2d) 684, for determining whether counsel for a defendant in a criminal prosecution shall be entitled to see and make use of, for impeachment purposes, a statement given before trial by a witness for the state.

 (D. C. N. Y. 1957), 20 FRD 404.

 Id. page 406. In accord is Tobacco & Allied Stocks v. Transamerican Corp. (D. C. Del. 1954), 16 FRD 534, 537. See also Hanover Shoe, Inc., v. United Shoe Machinery Corp. (D. C. Pa. 1962), 207 Fed. Supp. 407.