L.P. VOIGT, Secretary, Department of Natural Resources
You have requested by opinion regarding whether or not the Department of Natural Resources must grant access to certain types of information obtained by the department in its pollution control program. Your letter states that much of this information was given to the department in confidence and that assurances have been given from time to time by department staff members that the confidence would not be breached. Your letter sets forth the following examples of that information:
"1. Production, cost of treatment, profit and loss, and raw materials records obtained through personal interviews. Assurances in writing were given by staff personnel that this information would be used only for a general study not identified with specific mills and would be confidential.
"2. Cooperative mill waste surveys containing a description of production processes employed, major pieces of treatment equipment, production tonnages, waste water flows and solids, BOD and PH data. Assurances of confidentiality have been orally given from time to time by staff members.
"3. Records relating to approvals under section 144.555 of the Wisconsin Statutes.
"4. Industrial waste census forms containing productive capacity, raw materials information and waste volume concentration and point of discharge information. No assurances of confidentiality were given but concern has been *Page 286 
expressed by some of the companies supplying this information.
"5. Detailed expenditure information relative to installations of water pollution abatement equipment.
"6. Material which at the time of submission was not regarded as confidential but which now may be regarded as confidential and prejudicial to a competitive position to the person submitting the information."
Your letter goes on to state that the Department occasionally receives requests by individuals or companies to examine your files, and sets forth the following examples of the types of requests or demands received:
"1. A member of the general public comes into our offices and asks permission to look at our files regarding a certain company or a group of companies.
"2. A representative of the news media comes into our offices and asks permission to look at our files regarding a certain company or a group of companies.
"3. An employe or consulting engineer of one company requests permission to see the files of other companies.
"4. The files of one or more companies are subpoenaed in connection with an administrative hearing or court proceeding."
Finally, you ask in which of the above combinations must the Department open the files, and if the records are subpoenaed, would the Department have a reasonable legal basis for resisting the subpoena in some or all of the possible categories?
 LIMITATIONS ON RIGHT TO INSPECT PUBLIC RECORDS
Section 19.21 of the Wisconsin Statutes (formerly sec. 18.01) deals specifically with the custody of public records. It is clear that the records containing the information you mention are public records under sec. 19.21 (1). International Union v. Gooding (1947), 251 Wis. 362,29 N.W.2d 730; *Page 287 State ex rel. Youmans v. Owens (1965), 28 Wis.2d 672, 137 N.W.2d 470. Section 19.21 (2) provides that any person shall have full access to all public records for purposes of examination and copying. The public right of full access is, however, qualified in three respects:
1. The right to inspect is subject to such reasonable regulations with respect to hours, procedures, etc., that the custodian may prescribe to limit unreasonable interference with the ordinary operations of his office.
2. The right is limited or denied in some instance by express statutory provision.
3. The custodian may refuse inspection of certain records in instances where he believes the public interest in nondisclosure outweighs the strong public interest in having full public access to any public records. State ex rel. Youmans v. Owens, supra. In such event, the custodian must give as concrete an explanation as is possible for nondisclosure to the person requesting inspection of the record. Beckonv. Emery (1967), 36 Wis.2d 510, 153 N.W.2d 501. If the person seeking inspection is unsatisfied by such explanation, his remedy is in amandamus action in circuit court. State ex rel. Youmans v. Owens, supra,
at p. 682.
The situations in which the custodian may deny access to public records (where he is not authorized to do so by express statutory provision) are not specifically set down in the cases cited above. The court has stated, however, that sec. 19.21, Stats., will be construed in parimateria with sec. 66.77, Stats., formerly sec. 14.90, the Wisconsin open meeting law, and that the policy guidelines for holding closed meetings set forth in sec. 66.77 (3), Stats., will be applicable to the question of confidentiality of records under sec. 19.21. Youmans case, supra at pp. 684-685. It does not appear, however, that any of the standards of sec. 66.77 (3), are applicable to the examples you set forth in your letter.
The court in the Youmans case did point out that other common law exceptions remain to the public right of full access to public records. One exception specifically mentioned was the situation where information had been obtained *Page 288 
by a public agency on the promise that it would be kept confidential and not be disclosed. The court cited the case of City County of SanFrancisco v. Superior Court (1951), 38 Cal. 2d 156, 238 Pac. 2d 581, as an illustration of this exception, stating that:
"* * * There the records sought to be inspected contained information which had been gathered from employers under the pledge that it would be kept confidential. To have permitted inspection would not only have constituted a breach of this pledge, but would have seriously handicapped governmental agencies in gathering information in the future under a similar pledge because of distrust that the pledge would not be observed." Youmans, supra, at pp. 681-682.
The City County of San Francisco case involved a commission which was charged with the responsibility of setting a wage scale for municipal employees in accord with the generally prevailing wage scales. In order to determine this wage scale, the commission obtained data from 200 private employers in the vicinity. Representatives of the municipal employees sought inspection of the data accumulated from the private employers. The court found that the data from private employers was obtained on the promise that it would be kept confidential, that it had been given voluntarily to the commission, and that the commission had no power to obtain the data other than on a voluntary basis.
The California Supreme Court held that under these circumstances, the public interest would be harmed by disclosure. The decision was based upon the fact that the information could not have been obtained except upon the express condition and pledge that the identity of the source of the material would be treated as confidential. The public interest would suffer if the government broke its pledge of confidentiality, because public officials would be unable to obtain such information in the future. In accord is Norwegian Nitrogen Product Co. v. U.S. (1933),288 U.S. 294, 53 S.Ct. 360, 77 L.ed. 796.
I am of the opinion that the situation described in the City and Countyof San Francisco case, where information was obtained under official pledge of confidentiality, and *Page 289 
where the information could not otherwise have been obtained by the governmental agency, constitutes an exception under sec. 19.21, Stats., where the custodian of public records containing such information may deny inspection of those records in the first instance. I would suggest that the following criteria be considered, however, in deciding whether a particular pledge of confidentiality comes within the exception, and will, therefore, hold up in court. First, there must have been a clear pledge made. Second, the pledge should have been made in order to obtain the information. Third, the pledge must have been necessary to obtain the information.
Finally, even if a pledge of confidentiality fulfills these criteria, thus making the record containing the information obtained clearly within the exception, the custodian must still make an additional determination in each instance that the harm to the public interest that would result from permitting inspection outweighs the great public interest in full inspection of public records. The general requirement of full public access creates a strong presumption in favor of permitting inspection, even though the release of information is irreversible, while the denial of access is always subject to the review of the circuit court. This presumption is sound because, as a practical matter, few private citizens have the resources available to bring the necessary legal action to compel release of information when access has been denied by the custodian.
Applying these criteria to the examples stated in your letter, I am of the opinion that none of the examples come within the exception in the first instance. Examples 3 through 5 do not concern any pledges of confidentiality at all. Example 6 does not appear to either, but even if some pledges have been made recently, it is dear that no pledge was given to obtain the information at the time the department first acquired it.
Examples 1 and 2 do appear to involve situations where clear pledges of confidentiality may have been given. However, they also involve situations where the agency has specific statutory authority to require the production of the *Page 290 
information it seeks, and, therefore, do not meet the third criteria that the pledge of confidentiality must be necessary to secure the information. For example, sec. 144.555, Stats., referred to in Example 3 of your letter specifically requires an industry intending to discharge new or increased waste to submit a report to the department before work is commenced:
"Any industry which intends to increase the quantity of industrial wastes discharging to the surface waters of the state or to discharge a new waste to said waters or which intends to alter an existing outlet or build a new outlet for industrial wastes shall, before starting such work, advise the department * * * in writing concerning its intentions and supply the department with a general report describing steps which shall be taken to protect the surface waters of the state against new pollution or an increase in existing pollution. The report shall be submitted not less than 30 days before approval is desired, and no construction work shall be started until the report has been approved. * * *"
The Department also has specific authority to acquire from industries and other owners whatever information regarding existing facilities and discharges that is necessary for the Department to perform its regulatory duties. The Department can require the keeping of records and the submission of information under secs. 144.55 and 144.09, Stats.:
"144.55 Visitorial powers of department. Every owner of an industrial establishment shall furnish to the department all information required by it in the discharge of its duties under s. 144.025 (2). Any member of the natural resources board or any employe of the department may enter any industrial establishment for the purpose of collecting such information, and no owner of an industrial establishment shall refuse to admit such member or employe. The department shall make such inspections at frequent intervals. The secretary and all members of the board shall have power for all purposes falling within the department's jurisdiction to administer oaths, issue subpoenas, compel the attendance *Page 291 
of witnesses and the production of necessary or essential data."
"144.09 Enforcement. Records required by the department shall be kept by the owners and the department supplied with certified copies and such other information as it may require. Agents of the department may enter buildings, structures and premises of owners supplying the public or industrial plants with water, ice, sewerage systems, sewage or refuse disposal service and private properties to collect samples, records and information, and to ascertain if the rules and orders of the department are complied with. The department of justice shall assist in the enforcement of this chapter."
Sections 144.55 and 144.09, Stats., contain no specific provision regarding confidentiality of the information received pursuant to the statutes. This contrasts with sec. 144.33, Stats., which does provide that:
"144.33 Confidentiality of records. Any records or other information furnished to or obtained by the department in the administration of ss. 144.30 to 144.46, which records or information, as certified by the owner or operator, relate to production or sales figures or to processes or production unique to the owner or operator or which would tend to affect adversely the competitive position of such owner or operator, shall be only for the confidential use of the department in the administration of ss. 144.30 to 144.46, unless such owner or operator expressly agrees to their publication or availability to the general public. Nothing herein shall prevent the use of such records or information by the department in compiling or publishing analyses or summaries relating to the general condition of the outdoor atmosphere, if such analyses or summaries do not identify any owner or operator or reveal any information otherwise confidential under this section."
Section 144.33, Stats., was enacted by ch. 83, Laws of 1967, which gave the Department of Natural Resources responsibility for controlling air pollution and solid waste. Section 144.33 applies only to information gathered in the performance of the department's air pollution control and solid *Page 292 
waste management functions under secs. 144.30 through 144.45. In contrast, secs. 144.55 and 144.09 do not contain these sorts of explicit provisions regarding confidentiality, and are governed instead by the general public records statute, sec. 19.21, Stats.
It is my opinion that secs. 144.55 and 144.09, Stats., give the department full authority to obtain any information necessary to carry out its duties under ch. 144 (except for regulation of air pollution and solid waste under secs. 144.30 through 144.35, Stats.). This presumably includes all the information described in your letter, assuming that the department would not acquire any information that it does not need to carry out its regulatory functions.
I am of the opinion that the department must permit inspection of information submitted under a pledge of confidentiality where the information could have been obtained by the department pursuant to its statutory authority, and that the pledge of confidentiality must be considered as invalid and not binding to the officer or agency. To do otherwise would permit public officials to effectively waive the public right to know at their own discretion by making pledges of confidentiality when they are not necessary for the official to obtain the information, which would be clearly in violation of the public policy of sec. 19.21, Stats. Even if the pledge of confidentiality was made upon the mistaken belief that it was necessary, it would be against public policy to require that the pledge be kept. After all, the persons who submitted the information in reliance of such a pledge have no grounds for complaint because they would have been required to submit the information under secs. 144.55 and 144.09 Stats., anyway.
WHO MAY INSPECT
Your letter also sets forth three different examples of persons who might seek inspection under sec. 19.21, Stats.: (1) a member of the general public, (2) a representative of the news media, or (3) an employee or consultant of a competition. In a formal opinion to E. H. Jorris, State Health Officer, dated July 16, 1969, I stated my opinion that the *Page 293 
common-law rule of public records, which requires a private person seeking inspection of a public record or document to show first a special, legal interest in the record or document, was not applicable in Wisconsin. 58 OAG 67. Stated positively, I was of the opinion that any
member of the public, regardless of his motives, has a right to inspect any public record, subject to the three limitations stated at the beginning of this opinion. 58 OAG at 71.
Twenty days prior to the issuance of that opinion, the Wisconsin Supreme Court decided the case of State ex rel. Journal Co. County Court
(1969), 43 Wis.2d 297, 168 N.W.2d 836, which was not discussed in my opinion to Mr. Jorris. The Journal Co. case turned on the question of whether there was an absolute right of inspection of a court decision, a right not subject to any balancing of the public interest under theYoumans case. I have found no particular statute, either predating sec.19.21, Stats., or enacted subsequent to it, that would give the public an absolute right of inspection of the department's records such as was found to exist in the Journal Co. case under sec. 59.14, Stats. On the other hand, I find no indication in the Journal Co. case that the Wisconsin Supreme Court intended to narrow its previous line of decisions (discussed in 58 OAG 67) to the effect that a member of the public has:
"* * * an absolute right to inspect a public document in the absence of specifically stated sufficient reasons to the contrary." Beckon v. Emery,supra, at p. 518.
It is clear under that the Youmans case that there is no distinction between the three examples of persons you cite in your letter, in that they are all to be considered members of the general public seeking inspection of a public record, and are all entitled to inspection subject to the limitations previously discussed.
RESPONSE TO SUBPOENA
Your letter also asks my opinion as to how the department should respond to a subpoena duces tecum issued by a court or administrative agency. This matter was fully discussed in 57 OAG 138, and I am in complete agreement with my predecessor where he states at 57 OAG 142, that: *Page 294 
"I conclude that there are a number of good reasons why public records should not be subpoenaed from their proper depository for use in legal proceedings. They may be lost or destroyed. Until such time as they are returned they are not available for public inspection. Lack of such public records may disrupt the orderly flow of business of the public agency involved. Any person may inspect the public records and obtain certified copies. Any attorney who desires to prove the contents of a public record may do so by obtaining a certified copy in advance of the that date. It is not proper for an attorney, who fails to prepare his case in advance by obtaining such copies, to attempt to obtain original public records at the last minute by subpoena duces tecum. This is an unwarranted imposition upon the public officer involved. The courts refuse to allow this where certified copies could be obtained instead.
"Whenever you are served with such subpoena duces tecum, they should be promptly brought to our attention. We will move to quash such subpoenas and ask for costs where appropriate."
RWW:SMS