HOWARD FULLER, Secretary Department of Employment Relations
You have asked a series of questions regarding access under the public records law to certain information obtained from state employes in connection with state affirmative action programs.
Your first question is:
 1. What state or federal statutory or administrative limitations, if any, exist upon the right of a requester (as defined in Sec. 19.32(3), Stats.) to have access to records in my custody which identify the date of birth, sex, ethnic status and handicap status of individual state employes? *Page 27 
Section 19.36(1) reads as follows:
 Limitations upon access and withholding. (1) APPLICATION OF OTHER LAWS. Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).
Limitation on access to a particular file may be based on the exemptions to the open meetings law under section 19.85 if the custodian can make a specific demonstration that there is a need to restrict public access at the time the request is made. Sec.19.35(1)(a), Stats. The former limitation applies generally to categories of records. The latter requires a case-by-case determination at the particular time the request is made.
The pertinent statutory exemption that relates to your programs is section 230.13, which reads as follows:
 Closed records. Except as provided in s. 103.13, the secretary and the administrator may keep records of the following personnel matters closed to the public:
(1) Evaluations of applicants.
 (2) Names of applicants other than those certified for employment.
(3) Dismissals.
(4) Demotions.
(5) Disciplinary actions.
 (6) Pay survey data obtained from identifiable nonpublic employers.
 (7) Names of nonpublic employers contributing pay survey data.
This statute does not exempt personnel information, such as date of birth, sex, ethnic and handicapped status, provided on a job application form. Failure to specifically exempt this category of information means that it is subject to the general presumption in favor of disclosure. Indeed, under the rule of statutory construction expressio unius est exclusio alterius the exemption of certain items under section *Page 28 
230.13 implies that other items not mentioned are not exempt.Teamsters Union Local 695 v. Waukesha County, 57 Wis.2d 62, 67,203 N.W.2d 707 (1973).
You refer to section 103.13 as possibly having a bearing on this matter. It details the rights of an employe to gain access to his or her own personnel file. Although there are exceptions prescribed, it appears an employe will always have a right to see the part of the file relating to date of birth, sex and ethnic and handicapped status. In my opinion the affirmative establishment of these employe rights under the employment regulation provisions of chapter 103 does not necessarily deprive other persons of access to the same information pursuant to the open records law. Although the statute evinces a legislative sensitivity to personnel matters, it does not constitute a specific exemption for the purpose of section 19.36(1), and thus may not be used as a basis for blanket denial.
You also refer to section 19.85(1)(c) and (f), which authorizes exemptions from the open meetings law for the following purposes:
 (c) Considering employment, promotion, compensation or performance evaluation data of any public employe over which the governmental body has jurisdiction or exercises responsibility.
. . . .
 (f) Considering financial, medical, social or personal histories or disciplinary data of specific persons, preliminary consideration of specific personnel problems or the investigation of charges against specific persons except where par. (b) applies which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person referred to in such histories or data, or involved in such problems or investigations.
Once again, these provisions evince a legislative sensitivity to personnel matters, but it is clear that they do not constitute blanket exemptions from the open records law. Section 19.35(1), states in pertinent part:
 [T]he exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific *Page 29 demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.
With respect to section 19.85(1)(f), it is important to note that it is not enough to be considering some personal information. It must also be found that the information is such that if made public it "would be likely to have a substantialadverse effect" on the person's reputation. "Reputation" is what the community thinks about a person. Although there may be situations where the release of information regarding one's age, sex, ethnic background or handicapped status could satisfy this requirement, it will be very rare. Certainly it cannot be presumed as a general matter.
My conclusion to this point with respect to your first question is that there is no state statutory basis for a blanket exclusion of public records relating to a public employe's date of birth, sex, ethnic heritage or handicapped status.
As to federal law, there are express provisions requiring confidentiality of handicap information obtained by the state in connection with job applications. 29 C.F.R. § 32.15(a) starts out by prohibiting the state from even asking about handicap status, but section 32.15(b) goes on to allow the state to "invite" such information if it is made clear that the response is voluntary and the information will be used solely for affirmative action purposes. Furthermore, section 32.15(d) provides: "Information obtained in accordance with this section as to the medical condition or history of the applicant shall be collected and maintained on separate forms that shall be accorded confidentiality as medical records, except that [limited exceptions follow]." In my opinion this constitutes an exception to the public records law under section 19.36(1), and handicap information obtained as described must be kept confidential.
Federal regulations also contemplate some limitations on access to sex and ethnic information gathered and kept for the purpose of affirmative action programs. 29 C.F.R. § 1607.4B provides:
 Applicable race, sex, and ethnic groups for recordkeeping. The records called for by this section are to be maintained by sex, and the following races and ethnic groups: Blacks (Negroes), American Indians (including Alaskan Natives), Asians (including Pacific Islanders), Hispanic (including persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish *Page 30 
origin or culture regardless of race), whites (Caucasians) other than Hispanic, and totals. The race, sex, and ethnic classifications called for by this section are consistent with the Equal Employment Opportunity Standard Form 100, Employer Information Report EEO-1 series of reports. The user should adopt safeguards to insure that the records required by this paragraph are used for appropriate purposes such as determining adverse impact, or (where required) for developing and monitoring affirmative action programs, and that such records are not used improperly. See sections 4E and 17(4), below.
Although the statement could be stronger, it appears the intent of this provision is to limit the use of sex and ethnic information for purposes relating to equal opportunity programs. In my opinion, it would be reasonable for a custodian to decide that in order to insure that the records are not used improperly they must not be made generally available to the public under the public records law.
I have found no similar restrictions on access to age-related information obtained in connection with the Age Discrimination Act of 1967. 29 U.S.C. §§ 621-34 and 29 C.F.R. § 1627. Therefore, federal law does not provide a basis for limiting access to such information under the open records law. Also, note that birth records kept by state and local registrars are generally available to the public. Sec. 69.23, Stats. This indicates a legislative determination that birth date information is not the sort of sensitive information which might be kept confidential under the public records law.
Your second question is:
 2. If you determine that no statutory limitations exist, what common law limitations may exist? Does the application of a balancing test such as that described in State ex rel. Youmans v. Owens, 28 Wis.2d 672, 682, 137 N.W.2d 470 (1965), result in any limitations on public access?
One characteristic of the common law on open records is that it does have limitations, and the limitations are embodied in the statement of the common law balancing test which has been expressed as follows: "[One] must balance the harm to the public interest from public examination of the records against the benefit to the public interest from opening these records to examination, giving much weight to the beneficial public interest in open public records." State *Page 31 ex rel. Bilder v. Delavan Tp., 112 Wis.2d 539, 553,334 N.W.2d 252 (1983).
Appropriately, it is the responsibility of the custodian to apply the balancing test. State ex rel. Youmans v. Owens,28 Wis.2d 672, 682, 137 N.W.2d 470 (1965), 139 N.W.2d 241 (1966). The custodian is in the best position to identify and weigh conflicting interests. Remember, however, that there is a presumption in favor of access. I take this to mean that if counterbalancing interests are about even, the custodian should decide in favor of disclosure.
From information provided by you it appears that the major concerns about disclosure of an employe's birth date, sex, ethnic heritage and handicapped status is that it is personal information and could be used in undesirable ways by a requester. Specifically, there is a concern that the information could be used to target categories of people for unsolicited communications. There is also a concern that the information could be used to focus future discrimination.
You must evaluate these concerns for yourself, but I can give you some guidance based on existing legal authorities. First, it is well established that the requester's motives are not material. Sec. 19.35(i), Stats.; Youmans, 28 Wis.2d at 677. Observing this rule, our office has opined that private entities, including those with commercial purposes, may have access to birth records (58 Op. Att'y Gen. 67 (1969)), lists of students awaiting a particular program in a Vocational, Technical and Adult Education District School (61 Op. Att'y Gen. 297 (1972)) and mailing lists compiled by state agencies (68 Op. Att'y Gen. 231 (1979)), even though disclosure may result in unsolicited communications.
As for the fear of using the information for future discrimination, I can only point out that our supreme court was not receptive to such a generalized assertion in Newspapers, Inc.v. Breier, 89 Wis.2d 417, 421, 432, 279 N.W.2d 179 (1979). You must evaluate this fear based on your expertise but it is my opinion that the mere fear that some information might be used in a discriminatory way at some time is not sufficient to generally decline access to all the information all the time. *Page 32 
Your third question has two parts:
 3. a) What effect does the pre-existing pledge of confidentiality given by the University to its employes, limiting use to "statistical and reporting purposes only," have on the limitations, if any, described in your answers to questions #1 and #2, and further on my subsequent re-release of such information? . . . .
 b) Does the language used on the current state service application form (Rev. 4/83), quoted above, also constitute a pledge of confidentiality? This question arises because, if the information is made available to the public at large, it would not be possible to guarantee compliance with the statement that the information will be used for affirmative action and will not be used for discrimination.
Along with your questions you refer to a September 13, 1977, unpublished attorney general's opinion. It involved a request to the University to provide the names and addresses of all nonwhite University employes. The University resisted on the ground that ethnic heritage information had been solicited from and disclosed by employe candidates based on the understanding that it would be kept confidential and used only for statistical and reporting purposes in connection with the affirmative action program. I will quote from the opinion at length since it was not published.
 [An earlier] . . . opinion of the Attorney General goes on to list the three criteria which are considered in determining whether a particular pledge of confidentiality comes within the exception to the public right of full access. First, there must be a clear pledge of confidentiality. Second, the pledge should be made in order to obtain the information. Third, the pledge must be necessary to obtain the information. If the pledge fulfills these criteria, then the custodian, before he can withhold records, must make the further determination that the harm to the public interest that would result from permitting inspection outweighs the public interest in allowing full access to the records.
 From the information made available, it appears that the University has made a clear pledge of confidentiality to the minority persons, that the pledge was made in order to obtain the information, and that the pledge was necessary to obtain the information. The fact that only 40 of 1,000 minority employes on the Madison *Page 33 
campus were agreeable to be identified by name and address seems to confirm the assertion that the University would not be able to perform its statistical reporting responsibilities to the federal government without the pledge of confidentiality.
 The remaining question, then, is whether the University's interest in maintaining confidentiality outweighs Senator Swan's apparent interest in making the names available to his committee and the public. This brings us to your responsibility, as the custodian of the records, to weigh the relative public interests involved, that is, the interests of the University in maintaining the confidentiality of the names and addresses as against Senator Swan's responsibility as chairman of the Senate Committee on Governmental and Veterans Affairs. As the record presently stands, we know two things in regard to the needs of Senator Swan's committee. First, that they intend to do a study on the state's affirmative action program and desire the names and addresses of all minorities employed by the University System. Secondly, we know that Senator Swan's committee has denied his request that a subpoena be issued to the University for the records containing the names and addresses in question. In view of this fact and in the absence of any further specifics as to why the names and addresses of the minority employes are needed for the study, as opposed to the statistical information offered, it is my opinion that a court would support the determination of the University that the public interest in nondisclosure outweighs any public interest in disclosure.
 Accordingly, I am of the opinion that under the present state of the record, you are not under an obligation to disclose to Senator Swan the ethnic heritage of specific employes by name and address where this information was received from the employe under a pledge of confidentiality.
In response to your questions, I see no reason to change this earlier opinion. If the confidential information is provided to you by the University it is the University's obligation to preserve the confidentiality by binding you to a similar pledge which you must honor. As stated in 57 Op. Att'y Gen. 187, 191 (1968): "The law seems clear that information of a confidential nature gained by one administrative branch of the government from another may be used in preparation *Page 34 
for proper internal matters, but should not be disclosed to the public."
In the second part of your third question you ask whether the following language in the state employment application form constitutes a legally cognizable pledge of confidentiality: "Date of Birth, Sex, Ethnic and Handicapped Status Information is for affirmative action purposes. It will not be used to discriminate against any applicant."
In contrast, the language used by the University and the subject of the September 13, 1977, unpublished opinion, was as follows: "Heritage Code information requested only if and after a person is employed and will be used only for statistical and reporting purposes, including required reports to the federal government."
While I advised that the University language is a sufficiently clear pledge to satisfy the criteria set forth in earlier opinions, I cannot say the same about the language in the state application form. There is no express statement that the information will be used solely for affirmative action purposes thus necessarily implying that it will be otherwise confidential. Indeed, I doubt that a prospective employer could honor such a pledge with respect to "date of birth and sex" information.
Your fourth question is:
 4. What, if any limitations on access to this information apply to:
 a.) Myself, as Secretary of DER, when requesting said information from the agencies in regard to their employes;
 b.) Other state agencies when requesting said information from DER which is not specific to employes of their own agency; or
 c.) A representative of the Governor, when requesting such information on state employees from DER?
Given your responsibilities regarding development and evaluation of affirmative action programs, it is my opinion you have access to whatever information you need to carry out those responsibilities. Sec. 230.04(9) and (10), Stats. *Page 35 
Access by other state agencies and the Governor's office to person specific handicap information obtained in connection with a job application appears to be limited by29 C.F.R. § 32.15(d), which reads as follows:
 Information obtained in accordance with this section as to the medical condition or history of the applicant shall be collected and maintained on separate forms that shall be accorded confidentiality as medical records, except that:
 (1) Employing officials may obtain the information after making a conditional decision to make a job offer to the applicant or the applicant was placed conditionally in a job pool or placed conditionally on an eligibility list.
 (2) Supervisors and managers may be informed regarding restrictions on the work or duties of qualified handicapped persons and regarding necessary accommodations;
 (3) First aid and safety personnel may be informed, where appropriate, if the condition might require emergency treatment; and
 (4) Government officials investigating compliance with the Act shall be provided information upon request.
Access to sex and ethnic origin information should be restricted to the extent it is necessary to ensure the "records are not used improperly." 29 C.F.R. § 1607.4B.
Your fifth question is:
 5. What limitations, if any, exist on DER's or any other state agencies' ability to establish, when requesting said information, a pledge of confidentiality which may be successfully enforced? I refer you here to Attachments F and G which outline the University's position that, particularly since there is no state law requiring employes or applicants to provide this information, such a pledge is necessary to ensure the provision of accurate information for purposes of affirmative action and nondiscrimination reporting.
The essential elements for an enforceable pledge of confidentiality are set forth in my answer to your third question. In short, if a clear pledge of confidentiality is made in exchange for information, if the information could not be obtained but for the pledge and if public *Page 36 
interest in maintaining confidentiality outweighs the public interest in access to the information, the pledge would effectively exclude the information from disclosure under the open records law.
BCL:RWL