Larry GEORGE, Petitioner-Appellant,

v.

Pam KNICK, Respondent-Respondent.

Court of Appeals

*No. 94–0656. Submitted on briefs October 6, 1994.—Decided October 27, 1994.*

(Also reported in 525 N.W.2d 143.)

For the petitioner-appellant the cause was submitted on the briefs of *Larry George, pro se* of Sturtevant.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Laura Sutherland*, assistant attorney general.

Before Dykman, Sundby, and Vergeront, JJ.

DYKMAN, J. This is an appeal from an order dismissing Larry George's open records request. The issue is whether the trial court was required to conduct an *in camera* inspection of the records demanded by George. We conclude that an *in camera* inspection was required, and therefore reverse.

Larry George is an inmate at the Racine Correctional Institution. In September 1993, he made a § 19.35, STATS., open records request of the Waupun Correctional Institution records custodian. He sought the following material:

> 1. All incident reports written regarding the fight between two inmates on 8/9/93 in the WCI cafeteria from the NWCH during the noon meal.
> 2. A copy of the conduct reports written as a result of this fight.
> 3. A copy of any and all other documents which mention[ ] this incident as stated above.

The records custodian, Pamela Knick, replied to George's request by giving him a copy of the incident report. She denied his request for conduct reports that had been written concerning the fight because:

> Allowing other inmates access to another's conduct reports would create a substantial risk that you would use the information to intimidate, harass, or otherwise harm the other inmate which would constitute a breach of security of the institution and would produce harm to the public interest

596

sufficient to outweigh any presumed right of record access.

Knick also denied George's request for "other documents" because no other documents existed. George does not challenge this denial.

Pursuant to § 19.37, STATS., George petitioned for a writ of mandamus, alleging that he had a right to receive the conduct reports. The trial court dismissed George's petition without opinion, except to note that Knick had responded to George's open records request in compliance with the open records statutes. George appeals.

Wisconsin law presumes that public records are open to the public. Section 19.31, STATS., declares this policy:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

The procedure for handling open records mandamus actions was outlined in *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 682, 137 N.W.2d 470, 475 (1965), *modified*, 28 Wis. 2d 672, 139 N.W.2d 241 (1966). First, the records custodian determines whether the records should be released. *Id.* If the custodian determines that the public harm in releasing the records outweighs the public benefit of doing so, the custodian should refuse the demand for inspection. *Id.* Next:

> If the person seeking inspection thereafter institutes court action to compel inspection and the officer depends upon the grounds stated in his refusal, the proper procedure is for the trial judge to examine *in camera* the record or document sought to be inspected. Upon making such *in camera* examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection.

*Id.* (footnote omitted).

Since *Youmans*, the legislature and the supreme court have developed exceptions to the general rule of disclosure. For instance, in *State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 433-34, 477 N.W.2d 608, 610 (1991), the supreme court concluded that material contained in a prosecutor's closed file was immune from open records inspection. The custodian was not required to balance the public benefit and detriment of releasing the records. The fact that the records were closed prosecutorial records made them immune, *per se*. And in 1991, the legislature enacted § 19.36(7), STATS., which excepts from public records disclosure

the identities of certain applicants for employment in public positions.

There are many other exceptions to the public records law found throughout the statutes. Examples include patient health care records under § 146.82(1), STATS., certain records of used oil fuel facilities under § 144.52(1), STATS., judicial commission proceedings under § 757.93, STATS., and records of the value or weight of clams under § 29.38(9), STATS. Section 19.35(1)(am), STATS., adopted in 1991, contains several exceptions to the general policy of disclosure, such as making exempt from disclosure information that would endanger the security of a state correctional institution. *See* § 19.35(1)(am)2.c.

The procedure set out in *Youmans* has therefore been modified. If a document necessarily falls within a statutory or common law exception to the open records law, there is no need for an *in camera* inspection. The legislature and the courts have already determined that in those situations, the harm to the public interest outweighs the public benefit of releasing the records. A case exemplifying this concept is *State ex rel. Morke v. Record Custodian*, 154 Wis. 2d 727, 454 N.W.2d 21 (Ct. App. 1990). In *Morke*, we concluded that judgments of conviction contained information inimical to institutional security. *Id.* at 733-34, 454 N.W.2d at 24. A judgment of conviction is a well-known document which identifies crimes of which a person has been convicted, and the penalty assessed for the conviction. Thus, in *Morke*, there was no need for an *in camera* inspection to determine the contents of a judgment of conviction.

However, the title of a document may not reveal its contents. Such a document may or may not fall within

an exception, or, even if it does not, the harm to the public interest by disclosure may outweigh the public's right to know. There is no way to test a record custodian's reasons for withholding a record, the contents of which are unknown, without an *in camera* inspection by a trial court. And there is no way to determine whether the information contained in the withheld document is of the character asserted by the custodian, without an *in camera* inspection. *Youmans* places the judiciary in the important position of reading the withheld material without divulging its contents, and then making the decision of whether the public's right to know outweighs the harm to the public interest if all or part of the document is released. We will not dilute this judicial oversight outlined in *Youmans* by developing a blanket exception for conduct reports.

Both George and the State assert that conduct reports either should or should not be released because the public policy of this State requires disclosure or secrecy. The State attempts to analogize a conduct report to the conviction record at issue in *Morke*. But, as we have noted, we know the information contained in a judgment of conviction without looking at it. George asserts that the reasons given for nondisclosure by the custodian are bogus. The problem with each assertion is that we do not know what information is contained in the conduct reports. Had the trial court conducted an *in camera* inspection, we would have a sealed record containing the conduct reports and we could conduct the balancing test outlined in *Youmans*. It may be true that the information in the report would permit George or anyone to intimidate, harass or otherwise harm persons identified in the report. But we do not know that without viewing the documents.

There are cases where an *in camera* inspection is not necessary. But this case is not one of them. Accordingly, we reverse and remand to the trial court for an *in camera* inspection of the documents George seeks. Because neither George nor the State has totally prevailed in this court, no costs are awarded to either party.

*By the Court.*—Order reversed and cause remanded with directions.