James MUNROE, Petitioner-Respondent,

v.

Patrick D. BRAATZ, Respondent-Appellant.†

Court of Appeals

*No. 95–2557. Submitted on briefs March 11, 1996.—Decided March 28, 1996.*

(Also reported in 549 N.W.2d 451.)

†Petition to review denied.

For the respondent-appellant the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *Alan Lee,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *James Munroe,* pro se, of Green Bay.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. The State of Wisconsin appeals from an order issuing a writ of mandamus to Patrick Braatz, Administrator of the Division of Health Professions and Services Licensing for the Wisconsin Department of Regulation and Licensing, requiring him to release to the petitioner-respondent, James Munroe, certain records relating to a physician licensed by the department.

The issue is whether Braatz's reasons for withholding the information are sufficient to outweigh the strong public policy favoring disclosure of records kept by public agencies as declared in the public records law, §§ 19.31-19.36, STATS., and the many cases decided thereunder. We conclude that the trial court correctly ruled that the public interest in disclosing the records outweighs the public interest in maintaining their confidentiality, and we therefore affirm the order.

Munroe requested that the department provide him with the scores recorded on tests administered by the department to a physician, Dr. Severino G. Gomilla, in the years 1992, 1993 and 1994. Braatz, the custodian of the sought-after records, denied the request, setting forth the following reasons for the denial:

> I have reviewed your request and find that access to
> the examination scores of Dr. Gomilla should be

444

restricted. The actual and potential harm in releasing these scores substantially outweighs the benefits to the public interest if they were made available. The release of individual test scores presents a substantial likelihood that the scores will be used inappropriately in the distribution of medical services to the public. This would occur by patients attempting to use the scores as a basis for selecting a physician.

A passing score on a medical registration examination is evidence that the applicant possesses minimum competency to practice the profession. The examination is valid for that purpose only. The examination has not been designed to be used as a selection criteri[on] by the public for medical services or by employers who hire physicians. To otherwise use the test scores would likely result in harm to the general public seeking medical services were they to rely on the score as evidence of the relative skills and ability required for a particular medical position.

Munroe petitioned the circuit court for a writ of mandamus directing Braatz to comply with his request. An alternative writ was issued and the department made its return, moving at the same time to quash the writ. After a hearing, the trial court concluded that the public interest in keeping Dr. Gomilla's test scores confidential, as expressed in Braatz's letter, was outweighed by the public interest in disclosure, and ordered that the writ of mandamus issue.

In enacting the public records law, the legislature mandated a "presumption of complete public access" to the records of public agencies. *See Journal / Sentinel, Inc. v. School Bd. of the Sch. Dist. of Shorewood*, 186 Wis. 2d 443, 449, 521 N.W.2d 165, 168 (Ct. App. 1994).

And while the law recognizes that there may be circumstances where the conduct of public business requires that public access to certain records be denied or restricted, it stands for the proposition that "[t]he denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." Section 19.31, STATS.

When a requester asks to inspect public records, the custodian of those records must balance the public's right of inspection under the law against the public interest in nondisclosure. If the request is to be denied, the custodian must do so in writing, stating the specific public policy reasons for the refusal. *Village of Butler v. Cohen*, 163 Wis. 2d 819, 825, 472 N.W.2d 579, 581 (Ct. App. 1991).

When the custodian denies access and that denial is challenged in court, the first question is whether the custodian's denial was "made with the requisite specificity"—that is, whether it is sufficiently specific to provide a basis for judicial review. *Butler*, 163 Wis. 2d at 825-26, 472 N.W.2d at 581-82. If it is, the court next examines the stated reasons for the denial to determine whether they are sufficient to outweigh the strong public policy favoring disclosure. *Id*. at 826, 472 N.W.2d at 582. It is a "balancing test," and a refusal to disclose the requested information will be upheld only when the custodian's stated reasons are so strong as to " 'satisfy the court that the public-policy presumption [favoring] disclosure is outweighed by even more important public-policy considerations' " warranting nondisclosure. *Estates of Zimmer*, 151 Wis. 2d 122, 132, 442 N.W.2d 578, 583 (Ct. App. 1989) (quoted source omitted). There is, in short, " 'an absolute right to

inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary.' " *Id.* (emphasis in original).

Appellate review of the trial court's decision is de novo: we independently examine the sufficiency of the custodian's reasons. *Rathie v. Northeastern Wis. Technical Inst.*, 142 Wis. 2d 685, 687, 419 N.W.2d 296, 298 (Ct. App. 1987). We have often recognized, however, that even on a de novo review, "[w]e may benefit . . . from the analys[i]s of the circuit court . . . ." *State v. Eison*, 194 Wis. 2d 160, 178, 533 N.W.2d 738, 745 (1995).[1]

The department argues first that we should conclude that its decision to withhold the information passes the balancing test because that decision is

---

[1] In ruling Braatz's reasons for withholding the test scores insufficient, the trial court said:

> While I understand that public licensure is clearly within the public domain, I'm not persuaded that as it stands now, the release of test scores is not. I find the statement by Mr. Braatz to be quite paternalistic and somewhat patronizing. If a member of the general public wants to have the test scores as part of the information that a person seeking medical treatment would rely upon in determining whether that person wants treatment from a particular physician, I don't know that there is any basis to deny that. Of course, if anyone relies solely on one factor, one may be in error, but for an administrator to make the decision that just in case they would use only that as the basis for the decision-making we can't release that I don't believe is a decision within the administrator's power.
>
> . . . [I]f the only public interest is that people might make mistaken judgments if they rely solely on those scores, the scores could be released with a caveat to whoever receives them that this is not necessarily indicative of the physician's actual performance skills or ability to treat whatever problem the person may be seeking to be addressed by the physician rather than overriding the presumption of release . . . .

consistent with "sound public policy" as expressed in other sections of the statutes. The department refers us to statutes permitting agencies to close an otherwise open public meeting for the purpose of considering matters relating to the licensing of professionals, § 19.85(1)(b), STATS., or to financial, medical, social or personal histories or "disciplinary data" of specific individuals which, "if discussed in public, would be likely to have a substantial adverse effect upon the [person's] reputation," § 19.85(1)(f), and it maintains that permitting disclosure of the test scores in this case would have a similar "adverse [e]ffect" on Dr. Gomilla. As we have stressed above, our review must be based on the reasons stated by the custodian for denying access to the records, and Braatz's letter rejecting Munroe's request does not attempt to justify withholding the records for any such reason.

The department next analogizes the situation presented in this case to "pupil records" kept by schools, and with records of examination scores, rankings and other evaluations of applicants for state civil service positions—all of which are expressly declared to be confidential under §§ 118.125 and 230.13, STATS.—and it argues that it would be "anomalous" to conclude that the same legislature that enacted those statutes could have also intended, in passing the public records law, that state licensing board examination scores were subject to release.

We disagree. The public records law does not displace other provisions of the statutes providing for confidentiality of particular records. Indeed, the basic access provisions of the law are expressly conditioned

on the absence of other laws to the contrary,[2] and it is for the legislature, not this court, to create additional exceptions or exemptions to the public records law.[3] Had the legislature desired to create an exception for Department of Regulation and Licensing test scores, as it has in the statutes to which the department refers (and several others), it could have done so. It did not, and given the strength of Wisconsin's open records policy—one of the strongest declarations of policy to be found anywhere in the statutes[4]—we decline to usurp

---

[2] The basic "access" statute, § 19.35(1), STATS., begins: *"Except as otherwise provided by law,* any requester has a right to inspect any record." (Emphasis added.)

[3] We noted in *George v. Knick,* 188 Wis. 2d 594, 598, 525 N.W.2d 143, 145 (Ct. App. 1994), that in addition to the legislature, the supreme court, in the exercise of its common-law declaring power, has "developed exceptions to the general rule of disclosure" over the years. Just as we would not assume the legislative law-making power, neither would we assume the supreme court's law-declaring authority in order to create an exception to the public records law for the documents sought in this case. *See State v. Schumacher,* 144 Wis. 2d 388, 404-05, 424 N.W.2d 672, 678 (1988) (law-declaring and law-developing function rests primarily in the supreme court).

[4] Section 19.31, STATS., recognizes that all persons are entitled to "the greatest possible information regarding the affairs of government and the official acts of those officers and employe[e]s who represent them," and it declares that "providing persons with such information is declared to be an essential function of a representative government . . . ." The section concludes:

> To that end [the public records law] shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

the legislative prerogative and write still another exception into the law.

Finally, we reject the department's argument that the reasons stated in the Braatz letter are themselves so imbued with the public interest that they must be held to supersede the public's interest, as expressed in the public records law, requiring us to reverse the trial court's order.

We have discussed in some detail the strength of the public policy underlying the disclosure requirements of the open records law, and we do not believe that policy is overcome by the department's assertions of the public interest involved in preventing people from coming to "mistaken judgments" about physicians as a result of having access to their scores on examinations administered by a government regulatory agency. The department denied Munroe's request for one basic reason: the examination does not test the "relative skills" of those taking it and thus is not a valid criterion for use by the public in selecting or hiring a physician. The trial court correctly noted that, if that is the primary public interest at stake, it could be achieved by attaching a simple caveat to the released document indicating that such scores, by themselves, may not be an accurate means by which to evaluate the competence of the physician—much as a stock prospectus contains warnings that past performance of a security may not be a valid indicator of future profits.

We are satisfied that the reasons advanced by the department for denying the public access to the sought-after records do not raise public policy considerations sufficient to overcome the public interest in disclosing them. We therefore affirm the trial court's order.

*By the Court.*—Order affirmed.