STATE of Wisconsin EX REL. Elizabeth BLUM, Petitioner-Appellant,†

v.

BOARD OF EDUCATION, SCHOOL DISTRICT OF JOHNSON CREEK, Respondent-Respondent.

Court of Appeals

*No. 96–0758. Submitted on briefs December 9, 1996.—Decided March 6, 1997.*

(Also reported in 565 N.W.2d 140.)

†Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *Kirby E. Brant* of Watertown.

For the respondent-respondent the cause was submitted on the brief of *Larry Steen and Shannon A. Allen* of *Godfrey, Neshek, Worth & Leibsle, S.C.* of Elkhorn.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DEININGER, J. Elizabeth Blum appeals an order denying her petition for a writ of mandamus to

compel the Johnson Creek School Board to provide her access to certain records under the Open Records Law.[1] Because we conclude that the requested records are confidential "pupil records" under § 118.125, STATS., they are exempt from public access and disclosure under § 19.36(1), STATS. Accordingly, we affirm the denial of Blum's petition.

## BACKGROUND

Blum, through counsel, requested the Board to provide her "a per-class report of all interim grades which existed as of February 15, 1995 and which were later averaged or otherwise incorporated into the final grade" for the eighth semester for herself and one "other student." This request was later clarified as follows:

> It is simply impossible to believe that teachers had not entered any grades for tests, homework, class participation, and so on in their class books or other classroom record systems. . . . Those teacher-record grades are what I expect to receive. Whether such grades were filed with the office or otherwise reported is immaterial.

The Board had awarded the 1995 Academic Excellence Higher Education Scholarship to the "other student" whose interim grades were sought.[2] Although not iden-

---

[1] Sections 19.31 through 19.39, STATS.

[2] See § 39.41, STATS. Apparently, the "other student" stood first in class rank after seven semesters and received the scholarship. Blum stood first in the final, eight semester class rank, while the "other student" was then second. Although the record request may have been a prelude to litigation over the scholarship selection, this action was purely for mandamus under § 19.37(1), STATS. Thus, whether Blum is entitled to obtain the

tified by name in the record requests or in subsequent court documents, there is no question that the identity of the "other student" was known to Blum and could be discovered by "anyone."

The Board, by its president, responded to Blum's request by noting that it had already provided certain "materials and transcripts you requested" and by denying the specific request for interim grades:

> As per your request for teacher records three weeks into the final quarter, I will not burden the administrative staff in tabulating such material. These partial grades are immaterial in determining the recipient of the Academic Excellence Scholarship as per Board policy. Also, they are very incomplete and would not impact on the decision in naming a Valedictorian as per District procedure.

Blum then filed her mandamus petition. In response, the Board, through legal counsel, sent Blum's attorney a nine-page letter setting forth in detail its "specific reasons for denying disclosure to you of the requested records of per-class interim grades."

The circuit court, after hearing argument from both counsel, issued a memorandum decision concluding that the requested items were not public records because they were not kept by an "authority," and further, even if they were public records, they were exempted from disclosure by the confidentiality provisions of § 118.125, STATS.

---

records through civil discovery procedures, Chapter 804, STATS., is not before us.

## ANALYSIS

### a. Standard of Review

Generally, a circuit court's decision to grant or deny a petition for writ of mandamus will be upheld unless the court erroneously exercised its discretion. *See State ex rel. Lewandowski v. Callaway*, 118 Wis. 2d 165, 171, 346 N.W.2d 457, 459-60 (1984). Where, as here, however, the issue is the application of the Open Records Law to undisputed facts, we review de novo the question of law presented. *See Wisconsin State Journal v. University of Wisconsin-Platteville*, 160 Wis. 2d 31, 36, 465 N.W.2d 266, 268 (Ct. App. 1990).

### b. "Records" Kept by An "Authority"

Under § 19.32(2), STATS., a " '[r]ecord' means any material on which written . . . information is recorded or preserved, regardless of physical form or character-istics, which has been created or is being kept by an authority." An "authority" is defined as:

> [A]ny of the following having custody of a record: a state or local office, elected official, agency, board, commission, committee, council, department or public body corporate and politic created by consti-tution, law, ordinance, rule or order; a governmental or quasi-governmental corporation . . . or a formally constituted subunit of any of the foregoing.

Section 19.32(1).

The circuit court based its decision to deny the writ on its conclusion that "[t]he interim marks recorded by a teacher are not kept by an authority under the stat-

ute." The basis for this conclusion, however, is not clear because no evidentiary proceedings were conducted in the circuit court, nor did the Board file any affidavits detailing when, how, and by whom "interim grades" are created, maintained and used.

Blum argues that since an "authority," such as the Board, must act through its officers and employees, "[d]ocuments which otherwise fit the definition of 'records' are 'kept' by an authority whenever they are in the possession of an officer or employee who falls under the supervision of the 'authority.' " We agree. A public body may not avoid the public access mandate of Chapter 19, STATS., "by delegating both [a] record's creation and custody to an agent." *Journal / Sentinel, Inc. v. Shorewood Sch. Bd.*, 186 Wis. 2d 443, 452-53, 521 N.W.2d 165, 169-70 (Ct. App. 1994).

The Board asserts in its brief that the interim grades are not "given to the superintendent and are not kept by the School Board," and further that the Board "did not, does not, nor in the future intends to create or keep material and documentation defined as interim marks and grades which are created by individual teachers." The Board's counsel made similar assertions during argument in the circuit court. These assertions have no support in the record because, as noted, the Board presented no testimony or affidavits. Moreover, the assertions do not negate the Board's *entitlement* to require teachers to submit interim grades to the Board. Even if the interim grades are physically in the possession of teachers and not Board members, they are nonetheless within the "lawful possession or control" of the Board. *See Hathaway v. Green Bay Sch. Dist.*, 116 Wis. 2d 388, 393-94, 342 N.W.2d 682, 685 (1984); *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 678-80, 137 N.W.2d 470, 472-73 (1965).

Sections 19.32 to 19.37, STATS., are to be construed with a presumption in favor of "complete public access" to information regarding "the official acts of [government] officers and *employes* who represent them." (Emphasis added.) Section 19.31, STATS.; *see Hathaway*, 116 Wis. 2d at 392, 342 N.W.2d at 684. While a factual showing might be made that the information requested in this case was excluded from the definition of "record" in § 19.32(2), STATS., the Board failed to produce any evidence that would overcome the strong presumption in favor of public access required by statute and case law.[3] *See Fox v. Bock*, 149 Wis. 2d 403, 417, 438 N.W.2d 589, 595 (1989) (custodian must produce evidence and persuade fact-finder that "draft" exclusion applies). Thus, unless there exists: (1) a "clear statutory exception"; (2) a common law limitation; or (3) an overriding public interest in keeping the record confidential, the information sought must be disclosed. *Hathaway*, 116 Wis. 2d at 397, 342 N.W.2d at 687.

### c. Confidentiality of "Pupil Records"

Section 19.36(1), STATS., provides that "[a]ny record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1)." The Board argues that the interim

[3] The circuit court concluded that the interim grades did *not* qualify as "drafts, notes, preliminary computations . . . prepared for the originator's personal use," an exclusion from the definition of "record" under § 19.32(2), STATS., because they are created for a teacher's "professional use." The Board does not argue on appeal that the "personal notes" exclusion applies, nor is there evidence in the record to support such an argument. We therefore do not address this issue.

grades of the "other student" are pupil records exempted from disclosure by § 118.125(1)(c) and (d) and (2), STATS.[4] The circuit court concluded that "[d]isclosure of another student's marks to [Blum] is prohibited by Chapter 118," and we agree.[5]

Blum's attempt to remove the information she requests from the confidentiality mandate of § 118.125, STATS., is strained at best. She asserts that since the "other student" is not named in her request, the interim grades requested do not "relate to an individual pupil," and thus they are not "pupil records" under § 118.125(1)(d). Her concession that anyone who knew the scholarship recipient's identity "could identify the 'other student,' " by itself defeats any plausibility her argument might have. Moreover, nothing in § 118.125 suggests that "pupil records" are exempted from the

---

[4] Section 118.125(1)(d), STATS., defines "pupil records" as "all records relating to individual pupils maintained by a school"; § 118.125(1)(c) states that "progress records" are "pupil records which include the pupil's grades"; and § 118.125(2) mandates that "[a]ll pupil records maintained by a public school shall be confidential."

[5] Section 118.125(2)(a), STATS., requires that a pupil, or the parent or guardian of a minor pupil, must be shown a copy of the pupil's *own* "progress records." Blum's request was for both her own and the "other student's" interim grades. She does not argue on this appeal, nor did she in the circuit court, that the writ should be granted in part, compelling access only to her own interim grades. Rather, Blum's argument in both her initial and reply briefs focuses on why the "other student's" interim grades should not be deemed a record "relating to individual pupils" under § 118.125(1)(d). Neither party has addressed whether the Board improperly denied Blum access to her own interim grades. We therefore decline to consider the issue. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19, *cert. denied*, 506 U.S. 894 (1992).

confidentiality requirement if released under a guise of anonymity.

Finally, it should be noted that *if* the interim grades were shown to be "notes or records maintained for personal use by a teacher," § 118.125(1)(d), STATS., would exclude them from the pupil records confidentiality mandate of the statute. But, as the trial court noted, if the interim grades qualified for this confidentiality exclusion, they would likely still be excluded from public disclosure by § 19.32(2), STATS. (" 'Record' does not include drafts, notes . . . and like materials prepared for the originator's personal use."). As we previously explained, the record in this case is devoid of evidence that the interim grades qualify for either statutory exclusion. Thus, the grades are presumptively both a "record" for purposes of Chapter 19, STATS., and a "pupil record" for purposes of § 118.125, STATS.

We therefore conclude that the requested interim grades are pupil records exempted from disclosure under § 19.36(1), STATS., by the "clear statutory exception" set forth in § 118.125, STATS.

### d. Specificity of Reasons for Denial

Blum claims that since the Board failed to specify any cognizable grounds when it denied access to the information requested, a writ of mandamus must issue even if the denial is justifiable. She cites the following language from *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179, 184 (1979), in support of her argument:

> If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the

records must issue. *Beckon* [*v. Emery*, 36 Wis. 2d 510, 518, 153 N.W.2d 501, 504 (1967),] states, "[T]here is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary."

(Emphasis in original.)

The Board's denial letter referred only to the administrative burden in complying with the request and to the immateriality and incompleteness of the records. We agree with Blum that the letter failed to specify a sufficient public policy consideration that would outweigh the public's interest in access to the information. We also agree with Blum that the Board's post-petition response by legal counsel does not necessarily cure the insufficiencies of its original denial. *See Oshkosh Northwestern Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 484, 373 N.W.2d 459, 462 (Ct. App. 1985).

We conclude, however, that the rule in *Beckon*, that an authority's failure to sufficiently specify reasons for withholding information automatically mandates that access be ordered, is applicable only when the denial is justified by public policy considerations which outweigh the public policy favoring access. *See Breier*, 89 Wis. 2d at 427, 279 N.W.2d at 184. The *Beckon / Breier* rule does not, however, compel production of records whose confidentiality is expressly guaranteed by statute.

In *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 156-60, 469 N.W.2d 638, 643-45 (1991), the supreme court extensively reviewed the history and rationale of the *Beckon / Breier* rule. The court concluded that the "specificity" rule developed for "two primary reasons":

First, the specificity requirement provides a means of restraining custodians from arbitrarily denying access to public records without weighing whether the harm to the public interest from inspection outweighs the public interest in inspection. Second, specific policy reasons are necessary to provide the requester with sufficient notice of the grounds for denial to enable him to prepare a challenge to the withholding and to provide a basis for review in the event of a court action. The specificity requirement is, therefore, procedural in nature. The focus at this stage is not on whether the custodian was correct in denying the inspection request; it is on whether the custodian has fulfilled his obligation to the public to provide a meaningful and reviewable response to the request.

*Id.* at 160-61, 469 N.W.2d at 645.

The cited rationale for the rule has validity only when the basis for a denial of access is grounded upon public policy considerations. When a custodian concludes that the public's interest in access is outweighed by some competing public interest, he or she must tell the requester (and any court which might ultimately review the denial) what that interest is. If, however, the information requested is specifically exempted by statute from disclosure, as are the interim grades Blum requested, there is no need for a custodian to weigh competing public interests. The legislature has already done so.

Unlike the facts giving rise to a public-policy-based denial of access, which may indeed be unknown to the requester, the existence of a statute exempting certain kinds of information from disclosure is not uniquely within the custodian's knowledge. By the same token, a reviewing court's de novo determination whether certain information is statutorily exempted from

disclosure is not aided by anything a custodian might say in a denial letter, nor is it deterred by the custodian's silence.[6]

Here, in contrast to the failure in *Beckon,* 36 Wis. 2d at 518, 153 N.W.2d at 504, which "made it impossible for the courts to make the contemplated review," the Board's insufficient denial letter to Blum does not prevent a court from determining whether a "clear statutory exception" applies to the requested interim grades. We conclude that since the Board's denial of access is justified because the information sought is exempted from disclosure by § 118.125, STATS., the Board's failure to specifically cite the statutory exemption does not preclude us, or the trial court, from determining whether the Board was authorized to deny the request.

The dissent posits that "[n]o hint of the distinction made today by the majority has been suggested." Dissent at 393. We are not certain that "hints" in past opinions of possible future distinctions are necessary in order for a distinction to be made in an appropriate case. Nevertheless, we believe that distinguishing record access denials justified by "clear statutory

---

[6] The dissent correctly notes that "courts often require litigants to identify the statute or theory of law upon which they rely." Dissent at 398. Here, the Board, in its response to the mandamus petition, did identify the statutes and theories upon which it sought to rely. The trial court thus was not required to "hypothesize" the applicable statutory exception, nor was it required to examine the entire panoply of statutory exemptions to see if any might apply. We are not suggesting that any appellate waiver doctrines be abandoned. When a clear statutory exception to the Open Records Law applies, however, we conclude there is no reason to extend the waiver rule to prelitigation communications between the parties.

exceptions" from those justifiable only by public policy considerations is in fact foreshadowed in several of the cases cited in the dissent. In *Mayfair,* 162 Wis. 2d at 163, 469 N.W.2d at 646, after an extensive discussion of the *Beckon/Breier* rule concluded with the previously cited reasons for the rule, the supreme court determined that where the reasons for a denial are "obvious and well-known," it would not refuse to consider the merits of the denial. In *Munroe v. Braatz,* 201 Wis. 2d 442, 448-49, 549 N.W.2d 451, 454 (Ct. App. 1996), this court said:

> The public records law does not displace other provisions of the statutes providing for confidentiality of particular records. Indeed, the basic access provisions of the law are expressly conditioned on the absence of other laws to the contrary,[2]. . .

---

[2] The basic "access" statute, § 19.35(1), Stats., begins: "*Except as otherwise provided by law,* any requester has a right to inspect any record."

(Emphasis by the *Munroe* court.)

The dissent also maintains that a statutory exception versus public policy balancing distinction has previously been rejected by this court, citing *Munroe* and *Pangman & Associates v. Zellmer,* 163 Wis. 2d 1070, 473 N.W.2d 538 (Ct. App. 1991). Dissent at 394–95. We do not agree with the dissent's suggestion that our decision overrules *Pangman* and *Munroe.*

The statute under consideration in *Pangman*, § 19.85, STATS.,[7] is not a "clear statutory exception" to § 19.35, STATS. Rather, § 19.85 is only "indicative of public policy" and it:

> may be used as grounds for denying public access to a record only if the authority or legal custodian . . . makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

Section 19.35(1)(a), STATS.[8] Thus, § 19.35(1)(a) essentially creates a statutory *Beckon/Breier* rule when a public policy indicated by § 19.85, STATS., is relied upon for a denial. We are aware of no similar requirement applying to "clear statutory exceptions" to § 19.35, STATS.

We concluded in *Pangman* that no statutes cited by the City of Milwaukee were applicable to the records under consideration, other than § 19.85, STATS., as previously discussed. *Pangman*, 163 Wis. 2d at 1084, 473

---

[7] Section 19.85, STATS., sets forth exemptions to the Open Meetings Law, §§ 19.81-19.98, STATS.

[8] In *Pangman & Associates v. Zellmer*, 163 Wis. 2d 1070, 473 N.W.2d 538 (Ct. App. 1991), we specifically relied on the discussion in *Oshkosh Northwestern Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 373 N.W.2d 459 (Ct. App. 1985), which makes clear that § 19.85, STATS., is not a statutory exception to the Open Records Law, but merely a shorthand statement of various public policy considerations requiring exposition and balancing by a custodian:

> We acknowledge that sec. 19.35(1), Stats., states that the exemptions under which a closed meeting may be held pursuant to sec. 19.85 are indicative of public policy. . . . [However], the custodian must state specific public policy reasons for the refusal.

*Oshkosh*, 125 Wis. 2d at 485, 373 N.W.2d at 462-63.

N.W.2d at 543-44. We also concluded that the public policy reasons cited by the remaining municipalities in the consolidated appeal were sufficiently specific. *Id.* at 1085-89, 473 N.W.2d at 544-46. We did not address whether a "clear statutory exception" applicable to the records justified the denials, even though not cited by a custodian at the time of denial.

Our decision today also does not contradict our holding in *Munroe v. Braatz*, 201 Wis. 2d 442, 549 N.W.2d 451 (Ct. App. 1996). We held that "the reasons advanced by the [Department of Regulation and Licensing] for denying the public access to the sought-after records do not raise public policy considerations sufficient to overcome the public interest in disclosing them." *Id.* at 450, 549 N.W.2d at 455. The custodian there, as in *Pangman*, sought to rely on public policies indicated by § 19.85, STATS., and we determined that the custodian had not adequately justified the denial on that basis. *Munroe*, 201 Wis. 2d at 448, 549 N.W.2d at 454. Our only discussion in *Munroe* of statutory exceptions was the previously quoted acknowledgement that statutory exceptions have a preemptive effect on the Open Records Law, and a recognition that no statutory exceptions applied to the records there under consideration. *Id.* at 448-50, 549 N.W.2d at 454.

In summary, we conclude that § 118.125, STATS., which prohibits the disclosure of individual student grades to others, is a clear statutory exception to the access mandate of § 19.35, STATS. The Board's failure to properly specify a reason for denying access to a student's grades does not, therefore, entitle Blum to compel their disclosure. Our conclusion should not be construed as an endorsement of silence or obfuscation by an authority when denying an open records request.

An authority is obligated under § 19.35(4), STATS., to notify a requester of the reasons for a denial of access. We hold only that the failure of an authority to comply with one statute does not require a court to order it to violate another.

*By the Court.*—Order affirmed.

DYKMAN, P.J. (*dissenting*). Thirty years ago, the supreme court adopted a rule requiring custodians to give reasons for withholding government documents from public scrutiny. A police chief had refused an attorney's request for records of citations issued by a particular police officer, giving no reasons for that refusal. The court determined that the police chief's failure to give specific reasons for refusing to release a public record required the release of that record whether or not adequate reasons might later be given:

> No doubt a number of plausible and perhaps valid reasons for withholding these documents could have been specified and, if so specified, the trial court might after the determination outlined in [*State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 137 N.W.2d 470 (1965)] have upheld the police chief's determination. But no reason was given, and from the record it is obvious that no attempt was made by the chief of police or his representatives to comply with *Youmans* and its rationale.
>
> We thus conclude, consistent with the admonition of *Youmans*, that where, as here, no specific reason was given for withholding a public record from inspection, the writ of mandamus compelling its production should issue as a matter of course.

*Beckon v. Emery*, 36 Wis. 2d 510, 518, 153 N.W.2d 501, 504 (1967).

This "matter of course" rule was expanded to include not only a custodian's failure to give reasons for withholding a public record, but a custodian's failure to give *adequate* reasons for withholding a public record:

> If the custodian gives no reasons or gives insufficient reasons for withholding a public record, a writ of mandamus compelling the production of the records must issue. *Beckon, supra* at 518, states, "[T]here is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary." (Emphasis supplied.)

*Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179, 184 (1979).

Since *Newspapers, Inc.*, this "matter of course" rule has been uniformly applied. No hint of the distinction made today by the majority has been suggested. *See Chvala v. Bubolz*, 204 Wis. 2d 82, 92, 552 N.W.2d 892, 896 (Ct. App. 1996); *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 160, 469 N.W.2d 638, 644 (1991); *Milwaukee Journal v. Board of Regents*, 163 Wis. 2d 933, 942 n.5, 472 N.W.2d 607, 612 (Ct. App. 1991); *Pangman & Assoc. v. Zellmer*, 163 Wis. 2d 1070, 1084-85, 473 N.W.2d 538, 544 (Ct. App. 1991); *State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 439, 477 N.W.2d 608, 612 (1991); *Fox v. Bock*, 149 Wis. 2d 403, 416, 438 N.W.2d 589, 595 (1989); *Oshkosh Northwestern Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 483, 373 N.W.2d 459, 461-62 (Ct. App. 1985); *Hathaway v. Joint Sch. Dist. No. 1*, 116 Wis. 2d 388, 404, 342 N.W.2d 682, 690 (1984). Four of these cases are more recent than *Mayfair*, the case upon which the majority bases its conclusion that the "matter of course" rule is inapplicable to statutory open records exemptions.

Indeed, we have rejected the distinction the majority makes between records kept confidential by statute and those made confidential by use of the test which balances openness against harm. In *Pangman & Assoc. v. Zellmer*, 163 Wis. 2d 1070, 473 N.W.2d 538 (Ct. App. 1991), an attorney requested copies of the personnel files of nine police officers. *Id.* at 1075, 473 N.W.2d at 540. The records custodian refused to release performance and promotional reviews of the nine officers, citing several statutes as the reason for his refusal. *Id.* at 1083, 473 N.W.2d at 543. We rejected the citation of the statutes as an adequate response:

> Because the custodian gave no reasons other than the employment of exemption statute sec. 19.85, Stats., we reject the trial court's finding that the denial of the disclosure of the performance/promotional records was stated with specificity. Mere recitation of the exemption statute is insufficient without providing an added public policy reason for dismissal.

*Pangman*, 163 Wis. 2d at 1083-84, 473 N.W.2d at 543.

We faced a similar situation in *Munroe v. Braatz*, 201 Wis. 2d 442, 549 N.W.2d 451 (Ct. App. 1996), and we came to the same conclusion. There, the records custodian denied an open records request because he felt that the harm resulting from the release of certain test scores outweighed the public's interest in those scores. *Id.* at 444-45, 549 N.W.2d at 452-53. Later, in court, the custodian relied upon several statutes making the test scores confidential. We said: "The department refers us to statutes . . . . As we have stressed above, our review must be based on the reasons stated by the custodian for denying access to the records, and Braatz's letter rejecting Munroe's request does not attempt to justify withholding the records for

any [statutory] reason." *Id.* at 448, 549 N.W.2d at 454. We did not consider whether the statutes the custodian cited would have made the test scores confidential.

I also believe that the majority's conclusion is contrary to a second rule of Wisconsin's open records law. Neither this court nor counsel are to supply reasons that could justify a records custodian's inadequate response. In *Tratz v. Zunker*, 201 Wis. 2d 774, 781, 550 N.W.2d 141, 143-44 (Ct. App. 1996), we held:

> If other facts exist which justify Zunker's conclusion that Tratz should not have access to the records he sought, she has not disclosed them, and neither this court nor her counsel may supply them. *See Oshkosh Northwestern Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 486, 373 N.W.2d 459, 463 (Ct. App. 1995) ("[I]t is not the trial court's nor this court's role to hypothesize the reasons for denying access or to consider reasons not asserted by the custodian.").

*See also Nichols v. Bennett*, 199 Wis. 2d 268, 276, 544 N.W.2d 428, 431 (1996); *Munroe*, 201 Wis. 2d at 448, 549 N.W.2d at 454.

I do not believe that it is possible to square the majority's conclusion with the rules set out in these cases. The Board of Education's response to Blum's open records request was that giving the requested information was a burden and that the information was immaterial and incomplete. The majority agrees that those reasons are insufficient to support a denial of the requested records. Thus someone, either counsel, the trial court or this court has hypothesized or considered a reason, to wit: § 118.125, STATS., to deny Blum's open records request.

Even were we writing on a clean slate, without the rules set out in *Oshkosh Northwestern, Tratz, Munroe,*

*Pangman* and the other cases I have noted, I would not make the distinction made by the majority. I agree that *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta,* 162 Wis. 2d 142, 156-60, 469 N.W.2d 638, 643-45 (1991), gives two reasons for the rule that a records custodian must respond to an open records request with specificity. These reasons are: (1) to control arbitrary behavior by records custodians; and (2) to provide sufficient notice to requesters to enable them to challenge the denial and to provide a basis for judicial review.

I do not believe that these reasons are valid only if a custodian denies access on public policy grounds. We have seen an example of arbitrary behavior using statutory reasons in *Pangman.* There are at least 174 statutes and supreme court rules that exempt material from open records disclosure, and most are not found in Chapter 19 of the statutes.[1] The majority's decision upholds the right of records custodians to respond with

---

[1] For a small example: § 299.55, STATS., provides that government records relating to the regulation of used oil fuel facilities are subject to the open records law, but that under certain conditions, some of those records may become confidential. Section § 757.93, STATS., makes judicial commission proceedings confidential. Adoption records may not be disclosed except under certain circumstances. Section § 48.93(1d), STATS. A statement in a pardon application containing reference to the address of a victim is not subject to the open records law. Section § 304.10(3), STATS. Section 29.38(9), STATS., makes confidential certain records regarding the value or weight of clams and the location where they were collected. Reports and records of sexual contact by therapists are confidential and "are exempt from disclosure under s. 19.35(1)." Section 940.22(4)(a), STATS. Certain drafting records of the Legislative Reference Bureau are confidential. Section 13.92(1)(c), STATS. Section 93.50(2)(e), STATS., excludes from the open records law information and records obtained in farm mediation and arbitration. And some

irrelevancies, leaving counsel or trial and appellate courts to discover which statutory exemption might be applicable. I conclude that this encourages arbitrary behavior by records custodians rather than discouraging it.

In addition, considering irrelevant responses as adequate surely does not enable a requester to challenge an open records denial and cannot help us to review the case. If a response of "burden on administrative staff, immateriality and incompleteness" is sufficient, what response is insufficient? I can think of nothing. Of course, if a court examines the list of statutory exemptions to the open records law and concludes that none apply, the custodian can be ordered to provide the records. But only after expense and frustration for everyone except the records custodian. I am unwilling to embark on this new venture.

I am sympathetic with the majority's concern that the failure of a custodian to comply with the requirement of specificity should not require a court to issue a writ of mandamus in the face of a statutory exemption to the open records law. The answer to this is twofold. First, both the legislature and Wisconsin's appellate courts have long ago concluded that the benefits of requiring a specific answer from a custodian outweigh the embarrassment or inconvenience of releasing a record that might have been kept secret. We have a policy of openness in government in Wisconsin. If we err on the side of openness, that error is consistent with this policy. Section 19.31, STATS., provides:

> In recognition of the fact that a representative
> government is dependent upon an informed electo-

records collected by the State Historical Society are kept secret. Section 16.61(13)(d), STATS.

rate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Second, courts often require litigants to identify the statute or theory of law upon which they rely. A failure to do so often results in waiver. Thus, though Chapter 893, STATS., sets out a variety of statutes of limitation and requires that actions shall be commenced within a scheduled number of years or be barred, a party may waive this statutory right by failing to timely raise it. *Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 17, 402 N.W.2d 711, 717 (1987). This is true even though a defendant has a constitutional right to rely on a statute of limitation. *Westphal v. E.I. du Pont de Nemours & Co.*, 192 Wis. 2d 347, 373, 531 N.W.2d 386, 395 (Ct. App. 1995). Our Constitutions grant significant rights to persons accused of crime, but the United States and Wisconsin Reports are filled with examples of the waiver of those rights by failure to assert them.

It is consistent with Wisconsin's doctrine of waiver to require a records custodian to specify the reasons why he or she is withholding access to a public record.

It is also consistent with the waiver doctrine for a court to consider only asserted reasons when deciding whether public records should be kept secret. A court does not violate a statute of limitation when the statute is not timely brought to the court's attention. A court does not violate a defendant's constitutional rights by failing to consider a constitutional theory not cited or argued by the defendant. Nor does a court violate a statutory exemption to the open records law by examining only the reasons given by a custodian for nondisclosure.

After today, a school district that responds "forget it" to an open records request for pupil records will see that response affirmed on appeal, while the same response to a request for prison employees' addresses will result in an order directing the release of that information, notwithstanding that a proper response in the latter case would have led to the records being held confidential. *See State ex rel. Morke v. Record Custodian*, 159 Wis. 2d 722, 726, 465 N.W.2d 235, 236 (Ct. App. 1990). After today, records custodians need not concern themselves with replying to open records requests if they believe the record may be kept secret because of a statutory exemption. If a petition for a writ of mandamus is brought, the custodian's attorney can then search for reasons why the record should be kept secret. The result is that keeping government secret will be easier to accomplish, and litigation encouraged. Given the legislative directive found in § 19.31, STATS., I believe that courts should be developing the common law in favor of open government records, not secrecy.

The supreme court has said that we may not overrule our own published decisions. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246, 256 (1997). Nonetheless, I believe that we have done so today. I believe that

the majority's distinction between statutory and common law exemptions to our open records law is unnecessary, and ultimately illusory. I therefore respectfully dissent.