STATE of Wisconsin EX REL. Donald SAVINSKI, Petitioner-Appellant,

v.

Karren KIMBLE, Registrar, Wisconsin Resource Center, Phil Macht, Director, Wisconsin Resource Center, Respondents-Respondents.

Court of Appeals

*No. 97–3356. Submitted on briefs June 9, 1998.—Decided September 10, 1998.*

(Also reported in 586 N.W.2d 36.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Donald Savinski* pro se.

On behalf of the respondents-respondents, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Maryann Sumi*, assistant attorney general.

Before Dykman, P.J., Eich and Vergeront, JJ.

VERGERONT, J. Donald Savinski appeals an order quashing a writ of mandamus issued under § 19.37(1), STATS. Savinski argues that the denial of his request for his patient treatment records under Wisconsin's open records law, §§ 19.31 to 19.39, STATS., was inadequate and, therefore, the writ should not have been quashed by the trial court. He also argues that the trial court erred by failing to conduct an in camera inspection of the records. We conclude the written denial of his request was sufficient under § 19.35(4)(a) and (b), STATS.; access to the records was properly denied under § 51.30(4)(d)1, STATS., of the Mental Health Act and WIS. ADM. CODE § HSS 92.05; and an in camera inspection was not necessary. Therefore, we affirm.

## BACKGROUND

Savinski was committed to the custody of the Department of Health and Family Services as a sexually violent person under Chapter 980, STATS. He resides and receives mental health treatment at the Wisconsin Resource Center (WRC).

On February 20, 1997, Savinski sent a letter to Karren Kimble, registrar of WRC, making an open records request for:

> [N]on-confidential, un-privileged and available information (with patients names redacted where necessary) of the following:
>
> 1. Any documents or complaints from or concerning any patient at WRC complaining about me trying to dissuade them from taking treatment;
>
> 2. Any documents or complaints from or concerning any patient concerning me putting a "compliance hold" on them.
>
> 3. Any documents that I tried to undermine the treatment of any particular sex offender.
>
> 4. Any incident reports showing that I must take sex offender treatment against my will, such as policy statements, statutes, court orders or other legal documents.

On February 25, 1997, Kimble denied the request in writing. Her response stated: "Request denied—Your entire request id [sic] denied. Reason for denial—Section 51.30(4)(d)(1) and HSS 92.05(1)."[1]

On March 10, 1997, Savinski filed a petition with the trial court for a writ of mandamus to compel Kim-

---

[1] The cited statute and regulation both deal with a patient requesting his or her own treatment records. Savinski does not argue that he is entitled to records of other patients. Therefore, we assume his request is limited to his own records.

ble and Phillip Macht, director of WRC, to provide the requested records. *See* § 19.37(1), STATS. The trial court issued a writ. Kimble and Macht responded on May 27, 1997, asking the court to dismiss the writ. They asserted that Kimble properly denied Savinski's records request under § 51.30(4)(d)1, STATS., which governs an individual's access to mental health records during treatment.

Macht's affidavit accompanied the response to the writ. In his affidavit, Macht averred as follows. The WR C has a procedure for patients to request access to treatment records, which Savinski did not follow. Savinski should have submitted a request to his treatment team through his social worker, and then Macht, with the treatment team, would have decided whether to grant or restrict access. The WRC's procedure, in accordance with § 51.30(4)(d)1, STATS., and WIS. ADM. CODE § HSS 92.05(1), allows Macht, as the director of the facility, to restrict access to patient treatment records, except for records of medications and somatic treatments. The records request procedure was posted on every unit's bulletin board at the WRC.[2]

Macht also averred that, following WIS. ADM. CODE § HSS 92.05(1), he weighed the benefits of allowing Savinski access to the records he requested against the disadvantages of allowing access. He determined that the disadvantages outweighed the advantages and approved Kimble's denial of Savinski's records request. Macht explained the reasons for his decision:

---

[2] Savinski disputes that the posted policy stated from whom a patient should request records, and he asserts that he believed a request to Kimble, the registrar, was logical. Resolution of this dispute is not necessary to our decision.

> [A]ccess to the records he requested may allow petitioner to coerce, intimidate, or harass other patients. Access also may allow him to coerce, intimidate, or harass staff, especially those who are responsible for observing and reporting petitioner's behavior. Petitioner actively resists treatment and takes a counter-therapeutic approach to it, as is evidenced by his failure to follow the procedure for requesting records. . . . He is avoiding the treatment team by requesting the records from another source.

The trial court quashed the writ of mandamus, concluding that Kimble's denial of the request based on § 51.30(4)(d)1, STATS., and WIS. ADM. CODE § HSS 92.05(1) was sufficient and Macht followed the requirements of those statutes in approving that denial.

## ANALYSIS

A resolution of this appeal involves the correct application of the open records law and the Mental Health Act to undisputed facts. We review this question of law de novo. *See State ex rel. Blum v. Bd. of Educ.*, 209 Wis. 2d 377, 381, 565 N.W.2d 140, 142 (Ct. App. 1997).

Savinski argues that Kimble's denial of his open records request was insufficient. He contends that *Chvala v. Bubolz*, 204 Wis. 2d 82, 552 N.W.2d 892 (Ct. App. 1996), demands that every denial of access to a public record be accompanied by specific public policy reasons for the refusal, and that the citation to the statute describing the exception in this case did not meet that requirement. Although Savinski correctly summarizes our holding in *Chvala*, that holding does not apply here, where the reason for denial is a specific

838

statute that provides an exception to the presumption of open records.

Section 19.35(1)(a), STATS., states: "Except as otherwise provided by law, any requester has a right to inspect any record." Under this statute, public records are presumed open to the public "unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." *Hathaway v. Joint Sch. Dist. No. 1*, 116 Wis. 2d 388, 397, 342 N.W.2d 682, 687 (1984).

The Wisconsin Supreme Court has held that if the records custodian denies a request, he or she must "state specific public-policy reasons for the refusal." *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179, 184 (1979); *see also Beckon v. Emery*, 36 Wis. 2d 510, 518, 153 N.W.2d 501, 504 (1967). If sufficient reasons are not provided, there is an "absolute right" to inspect the document and a writ of mandamus shall be issued. *Id.* In *Chvala*, we interpreted this *Beckon/Brier* rule and explained, "[t]his specificity requirement is not met by a mere citation to the exemption statute." *Chvala*, 204 Wis. 2d at 87, 552 N.W.2d at 894. However, as we later clarified in *Blum*, 209 Wis. 2d at 386, 565 N.W.2d at 144, the *Beckon/Breier* rule applies only to those denials based on a balancing of public policy interests.

In *Blum*, we looked to the supreme court's decision in *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 469 N.W.2d 638 (1991), for guidance on the *Beckon/Breier* specificity rule. There the supreme court explained two reasons for the rule: (1) to restrain "custodians from arbitrarily denying access to public records without weighing whether the harm to the pub-

lic interest from inspection outweighs the public interest in inspection"; and (2) "to provide the requester with sufficient notice of the grounds for denial to enable him to prepare a challenge to the withholding and to provide a basis for review in the event of a court action." *Baldarotta*, 162 Wis. 2d at 160, 469 N.W.2d at 645. In *Blum*, we concluded these reasons are valid only when the basis for the denial of access is grounded upon public policy considerations. *Blum*, 209 Wis. 2d at 387, 565 N.W.2d at 145. If the information requested is covered by an exempting statute that does not itself require a balancing of public interests, we held, there is no need for a custodian to conduct such a balancing. *Id.* The legislature has presumably already weighed the competing public interests and the custodian may or may not be aware of the legislature's rationale for the exempting statute. *Id.*[3]

In this case, Kimble claimed there was a statutory exception by citing the specific statute and regulation on the written denial. The statute and regulation cited, § 51.30(4)(d)1, STATS., and WIS. ADM. CODE § HSS 92.05(1), do not require a balancing of public interests

---

[3] Kimble and Macht urge us to bypass the open records law and decide this case exclusively under § 51.30, STATS., of the Mental Health Act and WIS. ADM. CODE § HSS 92.05. However, they provide no authority for not starting our analysis with the open records law where the request was clearly made under the open records law and the records requested meet the requirements of records "kept by an authority" under § 19.32(2), STATS. Kimble and Macht do not contend that the records Savinski requested are not records "kept by an authority" under § 19.32 (2). Moreover, their proposed method of analysis is inconsistent with *State ex rel. Blum v. Bd. of Educ.*, 209 Wis. 2d 377, 565 N.W.2d 140 (Ct. App. 1997), discussed above.

for and against disclosure to determine accessibility. Section 51.30(4)(d) states in pertinent part:

> (d) Individual access. 1. Access to treatment records by a subject individual during his or her treatment may be restricted by the director of the treatment facility. However, access may not be denied at any time to records of all medications and somatic treatments received by the individual.
>
> . . . .
>
> 3. [T]he subject individual shall, following discharge, if the individual so requests, have access to and have the right to receive from the facility a photostatic copy of any or all of his or her treatment records. . . . The director of the treatment facility or such person's designee and the treating physician have a right to be present during inspection of any treatment records. Notice of inspection of treatment records shall be provided to the director of the treatment facility and the treating physician at least one full day . . . before inspection of the records is made. Treatment records may be modified prior to inspection to protect the confidentiality of other patients or the names of any other persons referred to in the record who gave information subject to the condition that his or her identity remain confidential. Entire documents may not be withheld in order to protect such confidentiality.

The related provisions in the administrative code provide:

> (1) Access during treatment. (a) Every patient shall have access to his or her treatment records during treatment to the extent authorized under s. 51.30(4)(d)1, STATS., and this subsection.
>
> (b) The treatment facility director or designee may only deny access to treatment records other than records of medication and somatic treatment.

1. Denial may be made only if the director has reason to believe that the benefits of allowing access to the patient are outweighed by the disadvantages of allowing access.

2. The reasons for any restriction shall be entered into the treatment record.

. . . .

(2) Access after discharge for inspection of treatment records. (a) After discharge from treatment, a patient shall be allowed access to inspect all of his or her treatment records with one working day notice to the treatment facility, board or department, as authorized under s. 51.20(4)(d)3, STATS., and this subsection.

. . . .

(4) Modification of treatment records. (a) A patient's treatment records may be modified prior to inspection by the patient but only as authorized under s. 51.30(4)(d)3, STATS., and this subsection.

(b) Modification of a patient's treatment records prior to inspection by the patient shall be as minimal as possible.

1. Each patient shall have access to all information in the treatment record, including correspondence written to the treatment facility regarding the patient, except that these records may be modified to protect confidentiality of other patients.

2. The names of the informants providing the information may be withheld but the information itself shall be available to the patient.

WISCONSIN ADM. CODE § HSS 92.05.

Nothing in the statutes or regulations suggests that the director is to weigh the harm to the public interest against the benefit to the public interest in deciding on access. Rather, the only reasonable interpretation of the statutes and regulations is that the

director is to balance the benefits to the patient of allowing access against the disadvantages to the patient, other patients and the facility. We therefore conclude that Kimble's citation to § 51.30(4)(d)1, STATS., and WIS. ADM. CODE § HSS 92.05(1) was sufficient if that statute and regulation apply to Savinski's request. We turn to that issue now.

Both § 51.30(4)(d)1, STATS., and WIS. ADM. CODE § HSS 92.05(1) concern access to "treatment records." Section 51.30(1)(b) defines "treatment records" to include:

> [T]he registration and all other records concerning individuals who are receiving or who at any time have received services for mental illness, developmental disabilities, alcoholism, or drug dependence which are maintained by . . . treatment facilities.

Savinski does not dispute that all the records he requested are "records concerning" Savinski, a patient "receiving . . . services for mental illness," and were "maintained by . . . [the] treatment facilit[y]." We conclude that they are treatment records under § 51.30(4)(d)1.

Finally, we must determine whether Kimble and Macht met the requirements of § 51.30(4)(d)1, STATS., and WIS. ADM. CODE § HSS 92.05(1) in denying Savinski's request. Savinski claims that the detailed reasons for the records request denial provided in Macht's May 27, 1997 affidavit in response to the writ of mandamus should have been provided to him at the time of Kimble's denial. The open records law, however, requires a response only from the records custodian, Kimble, and her response was provided "as soon as practicable and without delay" as required under § 19.35(4)(a), STATS.

Unlike the open records law, neither § 51.30 nor the corresponding provisions of the administrative code require the director of the facility to provide the requester with reasons for a denial of a records request. Section 51.30 contains no such requirement, and WIS. ADM. CODE § HSS 92.05(1)(b)2 requires simply that "the [director's] reasons for any restriction shall be entered into the treatment record." Macht, therefore, did not violate any statute or regulation by not providing Savinski with detailed reasons for the denial of his request prior to responding to a writ of mandamus.

■

Savinski also claims that the trial court erred by failing to conduct an in camera inspection of the requested records before rendering judgment. An in camera inspection of the records may be necessary in cases where balancing public interests is involved. *See State ex rel. Morke v. Donnelly*, 155 Wis. 2d 521, 530, 455 N.W.2d 893, 897 (1990). However, in cases such as this one, where the record requested falls within "a statutory . . . exception to the open records law, there is no need for an in camera inspection." *George v. Knick*, 188 Wis. 2d 594, 598, 525 N.W.2d 143, 145 (Ct. App. 1994).

We conclude that the trial court correctly ordered that the writ of mandamus issued under § 19.37(1), STATS., be quashed.

*By the Court.*—Order affirmed.